Danny COOK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–8801–CR–62.

Supreme Court of Indiana.

Oct. 17, 1989.

Michael A. Dvorak, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

After a trial by jury, Danny Cook was convicted of murder, a felony, Ind.Code § 35–42–1–1 (Burns 1985 Repl.). He was sentenced to forty years in prison.

Cook raises nine issues on direct appeal:

I. Whether the trial court erred by admitting still photographs of the crime scene;

II. Whether the trial court erred in permitting the State to publish a videotape of the crime scene;

III. Whether mention that a witness had testified before a grand jury should have resulted in a mistrial;

IV. Whether a police officer should have been permitted under the *Patterson* rule to relate a witness's statements;

V. Whether the trial court erred in denying Cook's motion to suppress statements which Cook made to an FBI agent;

VI. Whether the trial court erred in denying Cook's mistrial motion made as a result of testimony by State's witness FBI Agent John Behnke;

VII. Whether the trial court erred in admitting into evidence tangible evidence of bullet holes at the crime scene;

VIII. Whether the trial court erred in refusing Cook's final instruction on motive and giving the pattern instruction instead;

IX. Whether the evidence is sufficient to sustain Cook's conviction.

The evidence at trial revealed that on the evening of November 22, 1986, Robert Horvath, Casey Silsz and Michael Jaronik were drinking with a group in Marion's Hideaway, a bar in South Bend. Danny Cook was also in the bar that evening. Cook had an argument with Silsz and shoved him. The manager asked both men to leave. Silsz left, but returned shortly with a piece of block and began yelling at Cook. The

manager told Silsz not to cause trouble, and Silsz again left the bar. Shortly thereafter, Cook and Robert Horvath got into a scuffle. Michael Jaronik and the manager separated the two. The manager requested that Cook leave the bar, and he did.

Between ten and forty-five minutes later, Jaronik went to the front door to put out a stray dog that had wandered into the bar. While at the door, Jaronik was shot and fell back dead.

Witnesses to the shooting disagree about the amount of time between Cook's departure from the bar and the murder. They also disagree about how many shots were fired.

Cook and his girlfriend Becky lived near Marion's Hideaway. At about 10 p.m. that evening, Cook appeared at the home of his neighbor, Jean Winterrowd. He had blood on his mouth, and he told the Winterrowds he had been in a fight. He retrieved a gun Jean's son Carey had borrowed from Becky and drove off in his truck.

That same evening, Becky was visiting Victoria and Boyde Stremme's home, also located near Marion's Hideaway. Between 10 and 10:30 p.m. Cook arrived at the Stremmes and said that he had been in a fight at Marion's with Casey Silsz. Cook asked Boyde Stremme for help. Cook asked Stremme if he had a weapon. Stremme said he had a shotgun but no shells. Cook left.

Shortly thereafter, Stremme went looking for Cook. Immediately after Stremme left, Mrs. Stremme saw Cook pull his truck up in front of her home. Cook appeared calm. He got out of the truck holding a rifle, then got back in the truck and drove away. He returned later that night, and he and Becky spent the night at the Stremme's.

Cook and Becky stayed with the Stremmes for the next several days. At one point Cook and Stremme were watching a television news story about the murder, and Cook said the news report was wrong. He said he had driven by the bar, fired five rounds into the building with a .22 caliber gun, hit a man who was not an innocent bystander, and later tossed the gun away.

FBI agents arrested Cook in Georgia on March 13, 1987. They advised him of his rights and questioned him. Cook stated that he had never been in Marion's Hideaway, and he denied killing Jaronik.

An autopsy revealed that the victim died from a single gunshot wound. Ballistics tests showed the bullet removed from the victim was a .22 caliber bullet, fired from a gun with barrel rifling characteristics of 16 grooves and a right hand twist. The only manufacturer producing guns with those rifling characteristics is Marlin Firearms. The bullet could have been fired from one of two Marlin guns, the Marlin Model 60 and the Glenfield Model 60. Carey Winterrowd identified those two models as being similar to the gun he borrowed from Becky and returned to Cook on the night of the murder. Moreover, police recovered .22 caliber shell casings from the area where Carey had been using Cook's gun to shoot rats. Those casings were consistent with casings used in the Marlin Model 60 and the Glenfield Model 60.

### I. & II. *Still Photographs and Videotape of the Crime Scene*

■ Cook asserts that the trial court erred by admitting State's Exhibits 6, 7, 8 and 10, photographs of the front of Marion's Hideaway and the inside of the bar with the victim lying on the floor. He contends these were prejudicial and duplicative of State's Exhibit 5, a previously admitted but unpublished videotape showing a panoramic view of the inside of the bar with the victim lying on the floor. Cook also argues that once the photographs were admitted, it was error for the trial court to publish the videotape because the videotape merely duplicated the photographs.

The fact that items of evidence are cumulative does not merit reversal of the trial court unless there is a showing of abuse of discretion. *Russell v. State* (1988), Ind., 519 N.E.2d 549. In this situation, only four photos and a very brief videotape were admitted into evidence. While there was some duplication, the trial court was within the range of its discretion in admitting the exhibits.

### III. *Does Mention of a Grand Jury Require Mistrial?*

█ Cook argues that the trial court erred in denying his motion for mistrial made during the testimony of State's witness Boyde Stremme. Stremme testified on direct examination that he withheld certain information about the murder from the police until he was subpoenaed to appear before a grand jury. Cook objected to the mention of the grand jury, calling it an improper comment on prior criminal conduct. The trial court sustained his objection. The direct examination of Stremme continued and his testimony before the grand jury was mentioned again. Cook moved for a mistrial, but the trial court denied his motion.

Evidence of unrelated criminal activity is inadmissible on the question of guilt. Where evidence of criminal activity *is* revealed, however, the error does not necessarily result in reversal. The burden is on appellant to show he was placed in grave peril when his motion for mistrial was denied. *Saperito v. State* (1986), Ind., 490 N.E.2d 274.

In this case, evidence of criminal activity was not revealed. The simple mention that the witness testified before a grand jury did not by itself permit an inference that Cook was involved in unrelated criminal activity. The grand jury in question was indeed investigating other charges against Cook, but, this fact was never mentioned. The trial court properly denied the motion for mistrial.

### IV. *The Patterson Issue*

█ During direct examination, defense counsel asked Sergeant Fishburn, who interviewed witnesses at the scene of the shooting, how many shots Carol Heath, another patron at the tavern, told him she had heard. The trial court sustained the prosecutor's hearsay objection to the question. Counsel for Cook argues that Sergeant Fishburn's testimony was admissible under the *Patterson* rule because Heath had earlier testified at trial concerning other conversations with police about the murder and, consequently, was available for cross-examination. *See Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

Under the *Patterson* rule, the party offering hearsay testimony must lay a foundation for its admission by eliciting testimony about the same facts from the declarant at some point during the trial. *See Douglass v. State* (1984), Ind., 466 N.E.2d 721, 724; *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, 1130, *cert. denied,* 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284. The out-of-court declarant must acknowledge having made a statement before the statement can be admitted as substantive evidence under *Patterson.* *Lambert v. State* (1989), Ind., 534 N.E.2d 235, 236–37.

Heath acknowledged having a conversation with police on December 1, 1986. Heath did not testify, however, about any any conversation with Sergeant Fishburn at the scene of the crime. Consequently, there was no foundation under *Patterson* for admitting Sergeant Fishburn's testimony about information he received from Heath on the night of the murder. The trial court correctly sustained the State's hearsay objection.

### V. *Admission of Post–Arrest Statements*

█ Cook claims the trial court erred in admitting statements he made to FBI Special Agent Behnke when he was arrested in Georgia. Behnke testified that Cook was handcuffed, orally advised of his rights, placed in an FBI vehicle, and advised of his rights a second time. Behnke further testified that Cook said that he understood his rights and agreed to talk to him but did not sign a waiver of rights form. At that point in Behnke's testimony, defense counsel requested a hearing outside the presence of the jury and moved to suppress any statements that Cook made to the agent. The trial court denied the motion to suppress. Behnke then continued to testify, saying he questioned Cook, who denied shooting Michael Jaronik or even going into Marion's Hideaway.

Cook argues the statements he made to Behnke should have been suppressed because Cook did not explicitly waive his federal constitutional rights.

The trial court's ruling is supported by Behnke's testimony that he orally advised

Cook of his *Miranda* rights before he answered any questions. Cook's statements after he acknowledged that he understood his rights constituted an implied waiver. An express written or oral waiver of rights is not necessary to establish a waiver. *Shelton v. State* (1986), Ind., 490 N.E.2d 738. The trial court properly denied the motion to suppress.

### VI. *Comment on Post–Arrest Silence*

The prosecutor asked FBI Special Agent Behnke whether he had obtained Cook's signature on a form which says Cook had been read his rights. Behnke replied: "At that point, since he had made a request to speak to an attorney, there was no further contact with him."

Defense counsel objected and moved for a mistrial. The trial court denied the motion for mistrial but individually admonished the jurors to disregard all of Behnke's cross-examination testimony.

Cook claims he was placed in grave peril because Behnke's statement was an evidentiary harpoon, a deliberate attempt to prejudice the jury against him. Cook calls Behnke's reply a comment on his silence and claims his right to due process of law was violated by the comment because the request for an attorney followed the giving of *Miranda* warnings.

Ruling on a motion for mistrial is left to the sound discretion of the trial judge. That discretion will be disturbed only if the defendant was improperly placed in a position of grave peril. Admonishing the jury to disregard objectionable conduct is presumed to protect the defendant's rights and cure any error. *Clifton v. State* (1986), Ind., 499 N.E.2d 256.

■ It is improper for a prosecutor to make or induce comments about a defendant's post-arrest silence in order to "impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976) (footnote omitted). *See also Yurina v. State* (1985), Ind., 474 N.E.2d 93, 96 ("prosecutor's use of a defendant's post-arrest silence to impeach his trial testimony is fundamentally unfair"). However, mentioning that a defendant requested an attorney after hearing his *Miranda* rights is not the same as commenting upon his choice to remain silent. "No sensible person would draw an inference of guilt from a defendant's request for a lawyer after he had been told he had a right to consult one; it is simply not true that only a guilty person would want to have a lawyer present when being questioned by the police." *Wainwright v. Greenfield*, 474 U.S. 284, 297, 106 S.Ct. 634, 641–42, 88 L.Ed.2d 623, 634 (1986) (Rehnquist, J., concurring in result).

■ Even if Behnke's statement could be considered a comment upon Cook's silence, it was an isolated statement. The prosecutor made no specific inquiry or argument respecting the defendant's post-*Miranda* silence, and the jury was instructed to disregard completely Behnke's entire testimony on cross-examination. Under those circumstances, "[t]he fact of [Cook's] post arrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case." *Greer v. Miller*, 483 U.S. 756, 764–65, 107 S.Ct. 3102, 3108, 97 L.Ed.2d 618, 630 (1987) (footnote omitted).

Behnke's statement was not an evidentiary harpoon. Because there was no *Doyle* violation and no resulting prejudice, Cook was not placed in grave peril, and the trial court properly denied the mistrial motion.

### VII. *Admission of Tangible Evidence*

Cook contends that the trial court erred when it admitted State's Exhibits 15–20, 22–24, and 30. The exhibits in question include several boards containing bullet holes removed from the south wall and front of Marion's Hideaway Bar, a poster containing a bullet hole removed from the south wall of the bar, and photos of those items. Part of the evidence was obtained on January 8, 1987, a month and a half after the shooting, and the rest on June 16, 1987, seven months after the shooting. Cook's grounds for objection at trial was lack of a proper foundation connecting the bullet holes in the boards and poster to the shooting that occurred on November 22, 1986. He now claims that the admission of the evidence was also highly prejudicial.

■ Even if a proper foundation was not laid for the admission of the exhibits, they are essentially immaterial to the issue of Cook's guilt. In the face of testimony by witnesses who saw Jaronik open the door and fall back dead from a gun shot wound and by witnesses who saw and spoke with Cook before and after the shooting, exhibits 15–20, 22–24, and 30 were probably peripheral to the jury's judgment. Admission of the exhibits was not error requiring reversal.

### VIII. *Jury Instructions*

■ Cook argues that the trial court erred in giving the State's instruction on motive rather than his instruction on motive because the State's instruction was "a negative statement of the law." State's Final Instruction No. 6 read:

> Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crime charged in this case.

> Defendant's Final Instruction No. 4 was:
> Proof of motive is not a necessary element of the crime with which the defendant is charged.

> Proof of motive does not establish guilt nor does want of proof of motive establish that a defendant is innocent.

> If the guilt of a defendant is shown beyond a reasonable doubt, it is immaterial what the motive for the crime may be—or whether any motive may be shown, but the presence or absence of motive is a circumstance which you may consider as bearing on the intent of a defendant.

It is clear that Defendant's Tendered Final Instruction No. 4 was also a negative statement of the law. Furthermore, the State's Tendered Final Instruction No. 6 came directly from the Indiana Pattern Jury Instructions (Criminal), § 12.33. This Court has approved its use. *See Rogers v. State* (1987), Ind., 506 N.E.2d 481, 483. The instruction tendered by defense counsel is a good one, and his argument that it is more even-handed and complete than the pattern instruction seems like a fair statement. The trial court certainly could have used it. On the other hand, the instruction the court did give was adequate, one approved before, and we are not persuaded that the differences between the two instructions warrant reversal.

### IX. *Sufficiency of the Evidence*

■ Cook's final claim is that that the evidence against him is insufficient to sustain his conviction. When reviewing the sufficiency of the evidence, this Court will not reweigh the evidence nor judge the credibility of witnesses. We will look to the evidence and reasonable inferences therefrom which support the verdict. The conviction will be affirmed if there is evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Stwalley v. State* (1989), Ind., 534 N.E.2d 229. As is clear from our above discussion, evidence favorable to the judgment is not merely sufficient; it is overwhelming.

We affirm the judgment of the trial court.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.