Paula K. WILLOUGHBY,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–9301–CR–00005.

Supreme Court of Indiana.

Jan. 22, 1996.

Further Appellate Review Granted
March 26, 1996.

James H. Voyles, Dennis E. Zahn, Mark C. Webb, Symmes, Voyles, Zahn, Paul & Hogan, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

## ON DIRECT APPEAL

SELBY, Justice

We are called upon to review Paula Willoughby's conviction for Murder, Indiana Code § 35–42–1–1, and Conspiracy to Commit Murder, I.C. § 35–41–5–2, a Class A felony, as well as her consecutive sentences totaling 110 years. We affirm the convictions, but reduce the sentence to forty years on the Murder count, and thirty years on the Conspiracy to Commit Murder count.

## FACTS

Paula Willoughby, Kevin Spore, and Douglas Stueber were co-workers at an Indianapolis business. Willoughby, a married mother of two children, apparently disenchanted with her husband, began an extra-marital affair with co-worker Stueber in June of 1991. Desiring to be free of the constraints of marriage without suffering the coincident inconvenience of divorce, and aware of insurance on her husband's life, Paula Willoughby asked Douglas Stueber to kill Paula's husband, Darrell Willoughby.

At trial, Douglas Stueber testified that he talked with co-worker Kevin Spore in hopes of finding an assassin for hire. Stueber testified that Paula Willoughby's co-defendant, Kevin Spore, agreed to kill Darrell Willoughby for $700.00. Stueber further testified that the trio eventually devised a plan to kill, in a drive-by shooting, Darrell Willoughby. Paula Willoughby provided Douglas Stueber with a list of family vehicles and license-plate numbers, and described the route which Darrell followed to work each morning; Stueber agreed to drive the vehicle and provide the weapon for the drive-by shooting.

Early in the morning of July 1, 1991, the Willoughbys' neighbors noticed two men sitting in a truck parked down the road from the Willoughby family residence. Later that morning, at approximately 6:30 a.m., police were notified of a motorcycle accident occurring on Georgetown Road alongside the Indianapolis Motor Speedway. Officers arriving at the scene discovered that a motorcycle had crashed into the Speedway's Gate Six, and that the motorcycle's driver, Darrell Willoughby, was dead. While investigating the accident scene, officers discovered blood spots and spent bullet-shell casings in the road. Examining Darrell Willoughby's body, they discovered multiple gunshot wounds.

That same morning, after word of Darrell Willoughby's murder reached the community, police received an anonymous telephone call informing them that Paula Willoughby had been having an extra-marital affair. The evening of Darrell Willoughby's murder,

Paula Willoughby, accompanied by her brother and Douglas Stueber, met with investigators. Willoughby denied having an affair with anyone, including Stueber. Continuing their investigation, police obtained a search warrant for Stueber's apartment and truck, executed the warrant, and discovered that Stueber's truck matched the description of the truck that neighbors had seen parked near the Willoughbys' residence the morning of the murder. Investigators discovered a box of .22 caliber ammunition in Stueber's apartment. The shell casings in that box matched the shell casings found at the crime scene. Police discovered numerous photos of Paula Willoughby in Stueber's truck.

Police then arrested Stueber as a suspect in Darrell Willoughby's murder. In the course of a series of statements made to police, Stueber admitted driving the truck used in the drive-by shooting scheme, and implicated Paula Willoughby and Kevin Spore in the murder and conspiracy to commit murder. Both Paula Willoughby and Kevin Spore were arrested later that day.

Initially, all three suspects were charged together for the murder and conspiracy to commit the murder of Darrell Willoughby. Later, as a result of Stueber's original statement to police, he was given limited immunity, and his trial was severed from the trial of the other co-defendants.

Paula Willoughby and Kevin Spore went to trial on murder and conspiracy to commit murder charges on March 9, 1992. After a mistrial resulting from a police-officer witness mentioning a polygraph exam, a second trial began on August 3, 1992. (R. at 1212, 1565.) At the end of the second trial, the jury returned a guilty verdict against Paula Willoughby on both the murder and conspiracy counts, but found Co–Defendant Kevin Spore not guilty on both counts. The trial court sentenced Paula Willoughby to the maximum sentence on both counts: sixty years on the murder count, fifty years on the conspiracy to commit murder count, and ordered Willoughby to serve these sentences consecutively.

## DISCUSSION

Willoughby, now before us on direct appeal, raises six issues:

I. Whether Willoughby's second trial, after the mistrial triggered by a police officer's comment about a polygraph exam, constituted double jeopardy.

II. Whether the State took improper advantage of the mistrial by later filing a second information expanding the dates of the conspiracy charged in the second trial.

III. Whether a black juror was improperly excused from Willoughby's jury panel.

IV. Whether hearsay evidence was erroneously admitted.

V. Whether Willoughby's motion for mistrial during her second trial was erroneously denied where the State allegedly implicitly referred to police attempts to have Willoughby submit to a polygraph examination, and where the State allegedly referred, during closing arguments, to her co-defendant's failure to testify.

VI. Whether Willoughby's sentences totaling 110 years are proper.

As to issues I through V, because we answer each of these questions in the negative, the decision of the trial court is affirmed. As to issue VI, we affirm the trial court's decision to sentence consecutively. However, we reduce Willoughby's sixty-year murder sentence to forty years, and her fifty-year conspiracy to commit murder sentence to thirty years. Each of these issues is developed below. Facts supplement each discussion as necessary.

### I.

We first examine the issue of whether the prohibition against double jeopardy bars a second trial after a State's witness causes a mistrial. Willoughby argues that the prohibition against double jeopardy as set forth in both the United States Constitution and the Indiana Constitution should have prevented her retrial after the trial court declared a mistrial. During Willoughby's first trial, a State's witness, Officer William Jones, described the steps he took to investigate Darrell Willoughby's murder, and recounted in

detail various events which occurred during his investigation. (R. at 1156–82.) During this examination, the following exchange between Officer Jones and the prosecutor took place:

Q: Okay. Was there anything mentioned about Doug Stueber at that point?

A: No.

Q: Okay. Did you have any opportunity then to have photographs taken of Mr. Stueber's truck?

A: Yes.

Q: And, when did you do that?

A: We photographed Doug Stueber's truck as it sat in front of Paula Willoughby's residence on July 2nd.

Q: And, did you personally observe the vehicle at that time?

A: Yes, I observed the vehicle.

Q: I believe you've previously testified to the jury that on the evening of July 1st you'd received a report of Mr. Stueber's truck being at that location, and actually ran a license check, is that correct?

A: Yes.

Q: All right. And, did you observe the same license number, on the evening of July 2nd, that had been previously reported to you on July 1st?

A: Yes.

Q: Did you have the opportunity, at that time, on July 2nd—having observed his truck—to interview or talk with Doug Stueber?

A: Only briefly.

Q: And where did that take place?

A: I'd gone to Paula Willoughby's house to inform her of our previous arrangement for her to take a polygraph test.

Immediately upon mention of a polygraph test, Willoughby's counsel moved for a mistrial. (R. at 1183–84.) The trial court granted Willoughby's motion for a mistrial, but found that Officer Jones' comments were not intended to force Willoughby into moving for a mistrial:

I would note for the record that the police officer's comment was not made as a result of an intentional question by the prosecutor; rather, it was a relatively innocuous

question by the prosecutor that invoked that response. Nor, do I believe that the—based upon what I know at this time—that the police officer involved intentionally used the word polygraph with the intent of getting that information before the jury properly. At least, as far as I'm concerned, I hope that the prosecutor and the police officer didn't do it intentionally. I see no evidence of that—or, heard no evidence of that. And, these kinds of things unfortunately do happen—by accident.

After the mistrial, the State filed a motion to dismiss the charges, which the trial court granted. (R. at 99.) The State later filed a new information which again charged murder and conspiracy to commit murder. (R. at 1230–31.) The Defendants filed a motion to dismiss the charges, arguing that the second trial would violate prohibitions against double jeopardy. In denying the Defendants' motion to dismiss, the trial court stated:

Well first of all I want to say I believe that mention of the word polygraph by the detective was in this situation inadvertent. It was in response to a question what did you do next. He said he want [sic] over to Mrs. Willoughbys [sic] house and offered her a polygraph. That's when the problem took place. I believe it was inadvertent. The State didn't intentionally cause the mistrial. Although sometimes you wonder whether or not police detectives are fully versed in all the intricacies of the law. None the less [sic] I believe in this situation it was not an intentional mention. (R. at 1503–04.)

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Indiana Constitution, Article 1, § 14 provides: "No person shall be put in jeopardy twice for the same offense." These constitutional directives against double jeopardy are codified in Indiana Code § 35–41–4–3, which provides, in relevant part:

(a) A prosecution is barred if there was a former prosecution of the defendant based

on the same facts and for the commission of the same offense and if:

. . . . .

(2) The former prosecution was terminated after a jury was impaneled and sworn or, in a trial by the court without a jury, after the first witness was sworn, unless (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination. . . .

(b) If the prosecuting authority brought about any of the circumstances in subdivisions (a)(2)(i) through (a)(2)(vi) of this section, with intent to cause termination of the trial, another prosecution is barred.

 Thus, if a defendant moves for or consents to a mistrial, the defendant forfeits the right to raise a double jeopardy claim in subsequent proceedings unless the motion for mistrial was necessitated by governmental conduct "intended to goad the defendant into moving for a mistrial." *Oregon v. Kennedy* (1982), 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416; *Woods v. State* (1985), Ind., 484 N.E.2d 3, 5. To determine whether a second trial is barred after a defendant's motion for a mistrial, we must examine whether the prosecutor brought about the mistrial with the intent to cause termination of the trial. If the State acted with intent to force the defendant into moving for a mistrial, the prohibition against double jeopardy bars a second prosecution.

 It was the State's witness, Officer William Jones, who introduced the comment which caused the mistrial. Officer Jones' introduction of the word *polygraph* into testimony created the requisite prejudice necessary to terminate the first trial. References to polygraph exams, without stipulation of both parties, are inadmissible in Indiana. *Moore v. State* (1977), 267 Ind. 270, 273, 369 N.E.2d 628, 630; *Vacendak v. State* (1976), 264 Ind. 101, 110, 340 N.E.2d 352, 357, *cert. denied*, (1976), 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125; *Zupp v. State* (1972), 258 Ind. 625, 630, 283 N.E.2d 540, 543. The trial judge properly granted Willoughby's motion for a mistrial.

 Willoughby urges us to find that Officer Jones' inadvertent use of the word *polygraph* was governmental conduct "intended to goad the defendant into moving for a mistrial." *Oregon v. Kennedy, supra.* However, the trial court specifically found that "the state didn't intentionally cause a mistrial." On appeal, the decision of the trial court will be reversed only for an abuse of discretion. *Ried v. State* (1993), Ind.App., 610 N.E.2d 275, 279. No such abuse appears evident from an examination of the record in this case. Officer Jones is an experienced police officer who testified that he wanted to get the truth of the investigation before the jury when he mentioned the polygraph exam. The prosecutor merely asked Officer Jones where Officer Jones' conversation with Douglas Stueber took place. The officer's answer is not a response that the prosecutor likely anticipated. There is nothing in the record to suggest that Officer Jones colluded with the prosecutor to intentionally cause the mistrial, that Officer Jones intended to cause a mistrial, or that Officer Jones knew that the mere mention of the word polygraph was likely to cause a mistrial. Therefore, because the record supports the trial court's conclusion that the prosecutor did not intend to force Willoughby to move for a mistrial, Willoughby's second trial did not violate the constitutional or statutory, proscriptions against double jeopardy.

## II.

The next issue Willoughby presents is whether the State, after the mistrial, should have been permitted to withdraw its initial information and file a second information which expanded the scope of the conspiracy charged beyond that of the first information, or whether a second, expanded information was barred as untimely by our law regulating amendments to informations, I.C. § 35–34–1–5. Willoughby argues that the State took improper advantage of the mistrial when, prior to the second trial, the State withdrew the charging information used in the first trial and filed a new information. The new information was identical to the first in all respects except that it expanded the duration of the conspiracy. In the first information, Willoughby was charged with murder and

conspiracy to commit murder; the duration of this conspiracy was alleged to have been "between June 28, 1991 and July 1, 1991." (R. at 19–20.) In the second information, the second count, charging conspiracy to commit murder, expanded the time span of the conspiracy by eleven days, from June 17, 1991 through July 1, 1991. (R. at 1230–31.) Willoughby contends that the second information was changed in a material way and that the change was prejudicial to her. She argues that, but for the mistrial, an amendment to the first information would have been denied as untimely, and that we must reverse her conspiracy conviction.

Willoughby objected to the second information prior to the second trial, filing a motion opposed to the refiling of the charges. (R. at 100–04.) The trial court denied the Defendant's motion, permitting the State to expand the dates of the conspiracy charge. Ruling on the motion, the trial court stated:

> I believe the State of Indiana is entitled to dismiss charges and refile them. And uh, in affect practical affect [sic] is to amend the information. And that is what they have done here. I think they have done it properly. Uh, the only problem that it causes is whether or not there is some uh, prejudice to the defense. And, if the defense needs more time to investigate or prepare their case in light of the change that the State has made then that will be granted. Obviously, the process under this second filing needs to be expedited based on the May 18th trial date. If there is a problem with that in the preparation of the defense case then this Court will, of course, entertain motions to continue that trial setting.

(R. at 1504–05.)

Willoughby contends that the trial judge's decision to permit the State to file the second information was prejudicial, and that the new information was in effect a constructive amendment of the original information. She argues that the second information changed the factual allegations which formed the basis for the theory of prosecution, and that, but for the mistrial, any amendment to the information would have been barred under I.C.

§ 35–34–1–5, which dictates time limits for amending informations.

The State, in preparation for the second trial, filed a new information after properly withdrawing the first information. Indiana Code § 35–34–1–13 controls a prosecutor's ability to dismiss an information or indictment and later refile. That section provides:

> (a) Upon motion of the prosecuting attorney, the court shall order the dismissal of the indictment or information. The motion shall be made at any time before sentencing and may be made on the record or in writing. The motion shall state the reason for dismissal.

> (b) In any case where an order sustaining a motion to dismiss would otherwise constitute a bar to further prosecution of the crime charged, unless the defendant objects to dismissal, the granting of the motion does not bar a subsequent trial of the defendant on the offense charged.

■ A court must grant a prosecutor's motion to dismiss. *Holifield v. State* (1991), Ind., 572 N.E.2d 490, 496; *Hughes v. State* (1985), Ind.App., 473 N.E.2d 630, 632. Following dismissal, the second information was not, as Willoughby asserts, an "amended" information. Rather, the information contained charges for the new proceeding. Consequently, I.C. § 35–34–1–5, which governs the amendment of an information is inapplicable. See *Gillie v. State* (1987), Ind., 512 N.E.2d 145, 148.

■ We are aware of the danger of prosecutorial abuse and will vigilantly seek out and correct such abuse in situations where the State intentionally causes a mistrial for the purposes of materially altering an information. However, as noted in Section I, we are convinced that the mistrial here was caused by the inadvertent comment of a witness.

We have consistently ruled, in cases where dismissal occurs prior to jeopardy attaching, that there is no bar to refiling an information charging the same offense in identical terms. *Burdine v. State* (1987), Ind., 515 N.E.2d 1085, 1089–90; *Johnson v. State* (1969), 252 Ind. 79, 246 N.E.2d 181. In a jury trial, jeopardy attaches after the jury is empaneled

and sworn. Ind.Code § 35–41–4–3. Jeopardy had not yet attached in Willoughby's second trial at the time the prosecutor dismissed the first information. The State, therefore, had authority to refile the charges against the Defendant.

■ Moreover, although the count which charged the Defendant with conspiracy to commit murder expanded the time frame of the conspiracy beyond the duration set out in the original count, Willoughby has not demonstrated any prejudice. The same defenses available against the first conspiracy charge were available against the second. Further, Willoughby had ample time prior to the beginning of the second trial in which to modify her defense if necessary. The trial court correctly allowed the State to refile the charges of murder and expand the dates of the conspiracy to commit murder.

### III.

Willoughby next contends that the prosecutor's striking of a black prospective juror was racially motivated, and as a result, Willoughby is entitled to reversal of her conviction. At the conclusion of the jury selection process, both parties exercised peremptory challenges dismissing prospective jurors. Three white venirepersons and one black venireperson were dismissed. Willoughby, a white person, objected to the State's use of a peremptory challenge to dismiss the black prospective juror. In response to Willoughby's objection, the prosecutor explained that, in conducting an investigation of prospective jurors, the prosecutor had learned that the dismissed black person had "three or four brothers who have criminal records that are known throughout Bartholomew County." (R. at 2566.) The trial court overruled Willoughby's objection. Willoughby now argues that the trial court erred because the exclusion of the prospective juror was an improper race-based exclusion.

■ Race-based peremptory challenges are a form of racial discrimination which the State cannot condone. *Batson v. Kentucky* (1986), 476 U.S. 79, 88–89, 106 S.Ct. 1712, 1718–19, 90 L.Ed.2d 69. In *Batson*, the United States Supreme Court held that a defendant could establish an Equal Protection Clause violation with the discriminatory exclusion of jurors by showing that (1) the juror is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion was based on race. *Id.*, 476 U.S. at 96, 106 S.Ct. at 1723. Indiana acknowledged the *Batson* rule in *Andrews v. State* (1992), Ind.App., 588 N.E.2d 1298, 1300. To raise the issue of a juror improperly excluded on the basis of race, the defendant and the juror need not be of the same race. *Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411.

■ Once a defendant shows that a prosecutor has peremptorily challenged a member of a cognizable racial group and that the facts and circumstances raise an inference of impermissible purposeful exclusion, the burden shifts to the prosecutor to provide a race-neutral explanation for the challenges. *Isom v. State* (1992), Ind.App., 585 N.E.2d 1347, 1350, *transfer denied.* An explanation is neutral if it is "based on something other than the race of the juror. At [the explanation stage] of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York* (1991), 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1868, 114 L.Ed.2d 395.

■ The trial record does not reveal whether the trial court made a finding of prima facie discrimination sufficient to shift the burden of persuasion to the prosecutor to provide a race-neutral explanation for the peremptory challenge. Assuming, without deciding, that the facts and circumstances of the challenge at Willoughby's trial did raise an inference of purposeful exclusion, the prosecutor provided a race-neutral explanation for the peremptory challenge sufficient to meet that burden. The trial court did not err in denying Willoughby's objection.

### IV.

Willoughby contends that the trial court erred on three separate occasions by improp-

erly admitting evidence which should have been excluded as hearsay. First, Willoughby argues that the trial court improperly applied the prior consistent statement rule when it permitted Douglas Stueber's initial statement to police to come into evidence over Willoughby's objection. Next, Willoughby argues that the trial court violated the business records exception to the hearsay rule when the court permitted the victim's employer, rather than the victim's insurer, to provide foundation testimony supporting evidence of the value of Darrell Willoughby's life insurance, of which Paula Willoughby was beneficiary. Finally, Willoughby challenges certain testimony by Douglas Stueber and an auto-repair shop owner. Both testified to conversations with Spore regarding distribution of insurance proceeds. Willoughby contends that these conversations did not contain statements made in furtherance of a conspiracy, and, therefore, should have been excluded as hearsay.

We define hearsay as a "statement, other than one made by the declarant while testifying at the trial or a hearing, offered in evidence to prove the truth of the matter asserted." Indiana Rule of Evidence 801(c). The general rule is that "[h]earsay is not admissible except as provided by law or [the Indiana Rules of Evidence]." Ind.R.Evid. 802.

The first hearsay issue we examine is whether a prior statement which has elements both consistent and inconsistent with later trial testimony is a prior consistent statement admissible at trial. Indiana Rule of Evidence 801(d)(1)(B) provides that

> [a] statement is not hearsay if .... [t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is ... consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose.

Willoughby argues that the trial court erred when it admitted into evidence Douglas Stueber's initial statement to police. The State claims that this statement was a prior

consistent statement admissible under Rule 801(d)(1)(B) to rebut an attack on Stueber's veracity. We must examine whether the prior statement was sufficiently consistent with trial testimony to permit its admission as a prior consistent statement.

Douglas Stueber was the main witness against both Defendant Willoughby and Defendant Spore. The record shows that Stueber was the only witness who provided any evidence of a conspiracy allegedly existing between Stueber, Spore, and Willoughby. At trial, during cross-examination, Stueber's veracity was attacked through questions which challenged his ability to recount events, challenged his motive in testifying by mentioning the State's decision to grant Stueber limited immunity, and asked him about his desire for a plea agreement, implying that he might commit perjury to acquire a favorable agreement. In an effort to rehabilitate Stueber's credibility as a witness, the State sought to introduce an initial statement which Stueber gave to police. The State argued that the initial statement was admissible as a prior consistent statement offered to rebut a charge of recent fabrication under Fed.R.Evid. 801(d)(1)(B), adopted by this Court in *Modesitt v. State*, (1991), Ind., 578 N.E.2d 649. In *Modesitt*, while adopting 801(d)(1)(B), we ruled that

> [a] prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

*Modesitt* at 653–54.

Willoughby suggests that because Stueber's initial statement was not completely consistent with his testimony at trial, it should not have been admitted as an 801(d)(1)(B) prior consistent statement. The initial statement, although in many ways consistent with Stueber's trial testimony, was not completely consistent. At the time Stueber made the initial statement, Stueber may have been attempting to avoid implicating himself further in Darrell Willoughby's mur-

der. Further, the initial statement was relatively short, while at trial Stueber had ample time to expand the brief comments made during the initial statement.

In his initial statement Stueber admitted driving the truck, admitted that Co–Defendant Kevin Spore was the person who fired the weapon, and admitted that Stueber and Paula Willoughby had been out together the night before the murder. These are facts consistent with his trial testimony. The trial judge determined that, because the initial statement contained sufficient information consistent with Stueber's testimony to rebut an inference of recent fabrication, and because Stueber's veracity had been attacked during cross examination, under 801(d)(1)(B), Stueber's initial statement to police would be admissible.

■ The trial court properly admitted Stueber's preliminary statement. Although at this early stage Stueber was not yet fully admitting his involvement with Paula Willoughby or the murder, the initial statement was sufficiently consistent with Stueber's trial testimony to rebut an inference that Stueber fabricated the story in exchange for lenient treatment from the prosecutor.

Willoughby next argues that error occurred when the victim's employer, rather than the victim's insurer, was allowed to provide foundation testimony as to the value of the victim's life insurance policy naming Paula Willoughby as a beneficiary. The State alleged that Willoughby and Stueber intended to pay Spore his fee for killing the victim with proceeds from Darrell Willoughby's employer-provided life insurance policy. To establish the value of the policy, the State called Theodore Rostock, the human resources manager at Heavy Duty Friction, the victim's employer. Rostock was keeper of the records for the employer's personnel files and administered insurance benefits for the company. The insurance itself was provided by an out-of-state insurance company. Over Willoughby's objection, Rostock was allowed to testify that, had the victim's death been accidental, Willoughby would have received as much as $258,000.00 in life insurance proceeds. (R. at 5227–35.)

Willoughby argues that the contents of any insurance policies on the victim's life are hearsay, and that in order to be admissible, the policy evidence must fit within some exception to the hearsay rule. The State, Willoughby suggests, offered this evidence as a business record. Indiana's Rule of Evidence 803(6) provides that, to be admissible under the business record exception to the hearsay rule, the business record evidence must be shown to have been made in the ordinary course of business, at or near the time of the transaction, by one having a duty to record, and with personal knowledge of the transaction represented by the record. *Hinkle v. Garrett–Keyser–Butler School District* (1991), Ind.App., 567 N.E.2d 1173, 1178, *transfer denied.* Willoughby contends that allowing Rostock, an employee of Heavy Duty Friction, to testify to the contents of an insurance policy issued by an insurance company unidentified in the record was inadmissible hearsay within hearsay. Willoughby further contends that this evidence should not have been admitted through Rostock because he had no personal knowledge of the policies. Willoughby argues that, because the evidence provided a motive and bolstered Stueber's testimony regarding the plan to distribute the insurance policy proceeds to Spore, this evidence unduly prejudiced her.

■ In his role as personnel manager at Heavy Duty Friction, Rostock had personal knowledge of employee insurance coverage. Testimony to facts of which a witness has personal knowledge is not hearsay. *Buck v. State* (1983), Ind., 453 N.E.2d 993, 1000; *Baker v. State* (1982), Ind., 439 N.E.2d 1346, 1350. The extent of Rostock's personal knowledge affected the weight of the testimony offered. The weight to be given his testimony was for the jury to determine.

■ Further, the State notes that the focus of Willoughby's objection is on the business records exception to the hearsay rule, and argues that the exception does not apply in this case because it concerns only the admissibility of documentary evidence. Rostock offered only testimonial evidence. The trial judge has broad discretion to determine the admissibility of evidence, and we will not reverse the trial court's decision to admit

evidence absent an abuse of discretion. *Prange v. Martin* (1994), Ind.App., 629 N.E.2d 915, 920.

█ Willoughby's last hearsay issue concerns the co-conspirator exclusion from the hearsay rule. Indiana Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is a statement made by a co-conspirator during the course of and in furtherance of a conspiracy. Once the object of the conspiracy is achieved, however, subsequent statements made by a co-conspirator are not admissible under the co-conspirator exclusion. *Marjason v. State* (1947), 225 Ind. 652, 654, 75 N.E.2d 904, 905. At issue is whether certain statements made by Spore were in furtherance of the conspiracy.

The State introduced statements made by Spore, after the murder had taken place, relating to the payment of insurance proceeds. Testifying for the State, Stueber claimed that, shortly after the killing, he gave Spore $100.00, one half of what Spore was supposed to be paid at that time. (R. at 3508.) Stueber testified that later on the day of the murder, Spore asked about the remaining $100.00. Stueber further testified that, the next day, he spoke with Spore over the telephone and again discussed payment of the remaining $100.00, and agreed to meet with Spore to pay him. (R. at 3605.) Stueber said that he then wrote a check for $100.00 and delivered it to Spore. (R. at 3608.) Willoughby asked for and received a limiting instruction limiting this evidence to Spore only. (R. at 3606–08.)

█ The State argued that these statements were admissible as statements made by a co-conspirator in furtherance of the conspiracy. The State theorized that because the victim's insurance proceeds had not been paid, and one object of the conspiracy was to distribute the proceeds in payment of the murder-for-hire scheme, the conspiracy did not end with Darrell Willoughby's death. Paula Willoughby and Spore argued that the statements were not in furtherance of the conspiracy, because the statements were made after the murder, and were therefore inadmissible hearsay. The trial court, relying on *Wallace v. State* (1981), Ind., 426 N.E.2d 34, 42–43, ruled that statements regarding payment were admissible, notwithstanding that they were made after Darrell Willoughby's murder. In *Wallace,* we stated "[f]or purposes of admitting a coconspirator's declaration, the conspiracy and its objectives will not always be terminated upon the successful completion of the underlying offense." *Wallace* at 43. In that case, we concluded that statements regarding payment from insurance proceeds, made by co-conspirators after the murder of the victim, were admissible because the statements were in furtherance of the objective of the conspiracy, namely murder for hire. *Id.* at 43. Similarly, in the case at bar, the State's evidence relating to payment for the murder was admissible as statements made by a co-conspirator in furtherance of the conspiracy. Stueber's testimony regarding payment for Spore's alleged role in Darrell Willoughby's death (R. at 3602) was properly admitted, as was testimony regarding the $100.00 check which Stueber issued to Spore.

█ Willoughby also challenges the admissibility of a statement made by the owner of an Aamco Transmission shop located in Indianapolis. This auto-repair shop owner's testimony reported a conversation he had with Spore on the day of the murder. The shop owner testified that Spore told him that Spore's car needed repair, and that Spore discussed a payment plan with him. Spore told the shop owner that "money would be available to him [Spore] in the future[,]" apparently referring his expectation of insurance proceeds. (R. at 5244.) Willoughby claims that this shop-owner's testimony prejudiced her. However, the trial court admonished the jury to consider the shop-owner's testimony solely within the context of Spore's involvement in the murder and conspiracy. An admonition to the jury is presumed to protect the defendant's rights. *Cook v. State* (1989), Ind., 544 N.E.2d 1359, 1363. We conclude, therefore, that this testimony was properly admitted as co-conspirator's statements.

## V.

Willoughby contends that her motion for mistrial during her second trial was errone-

ously denied when the State implicitly referred to police attempts to have Willoughby submit to a polygraph exam, and where the State allegedly referred, during closing arguments, to Spore's failure to testify. As noted in Section I, *supra*, reference to a polygraph exam can be grounds for a mistrial. Willoughby contends that the State implicitly referred to the polygraph during the second trial, and that this alleged reference amounts to prosecutorial misconduct.

Willoughby's mother, Donette Epperly, testified that following the murder she was at the Willoughbys' home almost continuously until Paula Willoughby was arrested. During cross examination at the second trial the prosecutor questioned Mrs. Epperly regarding Officer Jones' visit to the Willoughby home, the visit during which Officer Jones had asked about a polygraph exam:

Q. And do you recall, at some point on that day of July 2nd, Detective Jones coming over and wishing to talk to Paula?

A. They came one—either Tuesday or Wednesday. I don't remember which. He and Turner came.

Q. Right.

A. First time I'd ever seen him.

Q. And, is it fair to say that you answered the door?

A. Yes.

Q. And you were pretty reluctant to let them talk to her at that time, were you not?

A. No, we invited them in.

Q. You invited them in?

A. Of course.

Q. I see. You didn't express any concern that Paula had had too much and questioned why they were there?

A. We invited them in. They asked her—and I told—to give her—let her get through the funeral and we would discuss them—her coming down.

. . . . .

Q. Ma'am, you've already indicated you had some hesitancy, is that correct?

A. Yes.

Q. All right. And at that time—

Donette Epperly did not mention any request for a polygraph exam. Nevertheless, Willoughby moved for a mistrial, arguing that the prosecutor's questions implicitly referred to the police effort to have Willoughby submit to a polygraph exam. (R. at 6437–38, 6479.) The trial court, however, denied the motion (R. at 6445), observing that there was no "negative inference" resulting from Mrs. Epperly's "hesitancy" regarding the presence of police. (R. at 6451, 6453.) The court stated

I think that under the circumstances that the jury might think that it very well could be a natural hesitancy. You've got somebody who's been murdered; you've got the police at the door.... I think that the jury could naturally infer that under the circumstances she was reluctant to let police officers into the residence before the funeral. Quite honestly, that was the initial impression I had.

Willoughby contends that she was denied a fair trial due to the prosecutor's conduct in phrasing questions to Willoughby's mother in this particular manner. Willoughby argues that the prosecutor's questions confused Mrs. Epperly and unfairly affected her credibility in the eyes of the jury. Willoughby argues that the jury must have concluded from Mrs. Epperly's testimony that Mrs. Epperly had some guilty knowledge regarding her daughter's possible participation in Darrell Willoughby's death.

■ When we review claims of prosecutorial misconduct we consider first whether the prosecutor committed misconduct, and second, if misconduct has been established, whether the misconduct, under the circumstances, placed the defendant in a position of grave peril. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, rather than the degree of the impropriety of the conduct. *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 120; *Andrews v. State* (1989), Ind., 536 N.E.2d 507, 509.

■ In the present case, the record quite simply does not support Willoughby's suggestion that these questions amount to prosecutorial misconduct. None of the prosecu-

tor's questions referred, either expressly or by inference, in any manner detectable to the jury, to the polygraph question. The prosecutor's questions merely asked Epperly to recount events of that evening. There is no evidence of prosecutorial misconduct here.

Willoughby next contends that a prosecutor's comment implied that Spore failed to testify on his own behalf, and that this comment resulted in prejudice to her. The reliability of Co–Defendant Spore's automobile was a factual issue at trial. During the State's rebuttal of the Defendants' closing arguments, the prosecutor advised the jury that the Defendants submitted no evidence showing that Spore's car was actually incapable of being driven on the morning of the murder. The prosecutor stated:

> The existence of the car trouble that Mr. Spore had—this piece of reasonable doubt, the car—this piece of reasonable doubt that there was trouble with the car. Now, I'm sure this speculation or imagination is, well, gee, it couldn't have been driven that day.... Did you hear evidence on this point? Or, was that just simply [Spore's attorney's] speculation? Why? Was it there?

(R. at 7068.)

Willoughby objected to this comment and moved for a mistrial on the theory that this was an impermissible reference to the Defendants' failure to testify. The trial court denied her motion.

A prosecutor may not comment on a defendant's decision not to testify. *Bernard v. State* (1989), Ind., 540 N.E.2d 23, 25. Had Spore raised this argument, we might consider the comment an affront to his right not to testify. However, Willoughby has failed to show how this comment could have prejudiced her. The prosecutor's comments were directed to Co–Defendant Spore and his attorney, not Willoughby. The statement cannot, as Willoughby asks us to do, be construed to imply her guilt as a result of her failure to testify. Additionally, any possible inappropriate inference of guilt was ameliorated by the court's instruction which stated

> [A] person charged with the commission of a crime cannot be compelled to testify and

is under no obligation to testify. The fact that neither Paula Willoughby nor Kevin Spore testified raises no presumption of any kind against them. It shall not be commented on, referred to, or in any way considered by the jury in determining the guilt or innocence of either defendant.

Thus, there was no prosecutorial misconduct here.

## VI.

Lastly, Willoughby argues that her consecutive enhanced sentences were imposed in violation of law. Willoughby was convicted of Murder and Conspiracy to Commit Murder and sentenced to sixty years on the Murder Count and fifty years on the Conspiracy to Commit Murder Count. The trial court ordered that the sentences be served consecutively, for a total sentence of 110 years. (R. 7145–58.)

We first examine Willoughby's claim that sentences for both Murder and Conspiracy to Murder violate the prohibition against double jeopardy because the single act of shooting, the act committed in furtherance of the conspiracy, is also the act which defines Willoughby's involvement in the murder. Willoughby argues that she is being twice punished for the same act.

A sentence for murder and conspiracy to commit murder does not, per se, violate double jeopardy. We have previously recognized that a defendant may be convicted of both murder and conspiracy to commit murder. *Chiesi v. State* (1994), Ind., 644 N.E.2d 104, *Buie v. State* (1994), Ind., 633 N.E.2d 250, 260, *Williams v. State* (1994), Ind., 631 N.E.2d 485. We noted recently, in *Buie v. State*, that when the state charges conspiracy and then chooses to charge the completed criminal act as the overt act necessary to support conspiracy, the pleadings charge what is in fact a single crime for double jeopardy purposes. See also *Derado v. State* (1993), Ind., 622 N.E.2d 181, in which we held that charges of dealing in cocaine and conspiracy to deal in cocaine violated notions of double jeopardy. In *Derado*, we reversed because the State was required to demonstrate no additional facts to prove the con-

spiracy charge beyond those facts necessary to prove the dealing charge.

Willoughby argues that the State, in her case, was required to demonstrate no additional facts to prove the conspiracy charge beyond those necessary to prove the murder charge. The charging information, Count I, read as follows:

Count I

Douglas Stueber, Paula Willoughby, and Kevin Spore, on or about July 1, 1991, did knowingly kill another human being, namely: Darrell Willoughby, by shooting at and against Darrell Willoughby by means of a deadly weapon, namely, a handgun, thereby inflicting mortal gunshot wounds on Darrell Willoughby, causing him to die;

Willoughby's conspiracy to commit murder charge read:

Count II

Douglas Stueber, Paula Willoughby, and Kevin Spore, between June 17, 1991 and July 1, 1991, did with intent to commit the felony of Murder, agree with each other to commit said felony of Murder, which is to knowingly kill another human being, namely: Darrell Willoughby and the following overt act was committed in furtherance of said agreement: Douglas Stueber provided a gun and drove a vehicle alongside Darrell Willoughby so the gun could be fired at and against the person of Darrell Willoughby on July 1, 1991.

Willoughby argues that convictions on these two counts violate the prohibition against double jeopardy because both counts require the same proof, that is the firing of a gun at and against Darrell Willoughby, on July 1, 1991. A plain reading of the counts demonstrates that this analysis is erroneous. Count I, Murder, requires the firing of a gun, while Count II, Conspiracy, requires the State to show the overt acts of Douglas Stueber's providing a gun and driving a vehicle alongside the victim to further the goal of the conspiracy.

Thus, the conspiracy count clearly charges acts and requires proof independent of the murder count. The trial court's decision to sentence on both counts is affirmed.

We also affirm the trial court's decision to order Willoughby to serve consecutive sentences. A trial judge may order consecutive service of multiple sentences. *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905. However, if the trial judge imposes consecutive sentences, I.C. § 35-38-1-3 requires the sentencing court to prepare a statement indicating the reasons for the sentences imposed. *Lindsey v. State* (1985), Ind., 485 N.E.2d 102, 108. The record of Willoughby's sentencing indicates that the trial court did provide such a statement. The trial court stated "[i]n this case as in every other the court has to balance aggravating circumstances involved with mitigating circumstances. I find the only mitigating circumstance in this case is the fact that the defendant has no prior criminal record. The aggravating circumstances are great in number." (R. at 7150.) The court went on to list aggravating factors sufficient to support the imposition of consecutive sentences. Willoughby's consecutive sentences are appropriate.

However, we find that the enhanced sentences are inappropriate in this case. At a post-trial modification-of-sentence hearing, the trial court noted that Defendant Spore was acquitted, and that Defendant Steuber, in exchange for cooperating with the prosecution, received only a thirty-five-year executed sentence. The trial court then stated

I mean to say that the relative involvement, if you had to label somebody who was the most culpable of the three, mid-culpable and least culpable, as far as their actions are concerned, I think probably you'd get a unanimous decision that Mrs. Willoughby committed the least amount of acts that directly caused the death.

(Supp.R. at 28–29.)

Although the constitutional requirement that a sentence be proportionate to the offense does not require us to compare, as Willoughby would have us do, the sentence in a particular case to sentences of others convicted of the same crime, *Spranger v. State* (1986), Ind., 498 N.E.2d 931, 945–46, nor of similar crimes, *Van Cleave v. State* (1987), Ind., 517 N.E.2d 356, *cert. denied* (1989), 488 U.S. 1019, 109 S.Ct. 819, 102

L.Ed.2d 808, *reh'g denied* (1989), 493 U.S. 914, 110 S.Ct. 271, 107 L.Ed.2d 222, we find the enhanced sentences excessive given the facts of this case. We, therefore, reduce Willoughby's sentence on the murder conviction to forty years, and reduce her sentence on the conspiracy to commit murder conviction to thirty years.

## CONCLUSION

Paula Willoughby's convictions are affirmed. The trial court's decision to require Willoughby to serve the sentences consecutively is affirmed. Willoughby's sentence on the murder conviction is reduced to forty years; her sentence on the conspiracy to commit murder conviction is reduced to thirty years.

SHEPARD, C.J., and DeBRULER and SULLIVAN, JJ., concur.

DICKSON, J., concurs and dissents in that he would affirm the trial court's sentence.