**Fuiavailili Tapua ALO,
Petitioner–Appellee,**

**v.**

**Antone OLIM, Individually and in his capacity as Superintendent of the Hawaii State Prison, Respondent–Appellant.**

No. 79–2692.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 22, 1980.

Decided Oct. 27, 1980.

Wayne Minami, Atty. Gen., George H. Yamamoto, Deputy Atty. Gen., Honolulu, Hawaii, on brief, for respondent–appellant.

Marie N. Milks, Deputy Public Defender, Honolulu, Hawaii, on brief, for petitioner–appellee.

Before CHOY and FLETCHER, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

The district court, 477 F.Supp. 133, granted Alo's petition for a writ of habeas corpus on the ground that his cross–examination at trial violated his constitutional right to due process. We affirm.

## I. *Facts*

Alo was charged with attempting to murder his girl friend. At the trial the victim testified that they had quarreled, that he shouted obscenities at her and kicked her in the face and chest, and that he forced her to accompany him to a deserted area where he shot her with a .38 calibre gun. The State presented other evidence that the two bullets removed from the victim were fired by a .38 calibre gun and that paraffin casts made on Alo's hand soon after his arrest showed the presence of dermal nitrates in a pattern suggesting a gunpowder discharge.

Alo testified on his own behalf, as the only defense witness. He stated that he had quarreled with the victim and had "kicked her in the face," but then had gone for a walk. On direct examination Alo stated that when a police officer stopped him on his way back to the apartment,

[the officer] asked me, "Where is your girl friend?" I told him, "Where is she? I thought she was in the apartment." And then he told me, "You know what happened," and I told him, "I don't know. I just came back from a walk." And then he put the handcuffs on me and he took me downstairs.

On cross–examination the prosecutor questioned Alo regarding this exculpatory story:

Q Mr. Alo, at the time you talked to or Detective Springer[1] talked to you, had you told any police officer what you told us today?

A No, I didn't.

Q Since talking to Detective Springer, have you told any police officers, police department, the story you have told us today?

A I don't recall.

Q Mr. Alo, when you talked to Detective Springer did you tell him the story that you told us this afternoon?

A No, I didn't.

DEFENSE COUNSEL: Your Honor,---

THE WITNESS: I don't remember.

DEFENSE COUNSEL: --I would again object to this line of questioning regarding defendant's assertion of his right to remain silent.

THE COURT: Overruled.

Q What was your answer, Mr. Alo?

A I don't remember.

Q You mean to say, Mr. Alo, that you are accused of the crime of attempted murder and you don't recall whether you talked to any police officers after you were arrested?

A I knew I talked to a police officer. I don't recall his name.

Q You explained to him that you weren't the one, Mr. Alo? You didn't do that?

A I didn't do it.

Q But, now, at the time of trial you come in and tell us that you didn't do it.

A I didn't do it.

The jury convicted Alo, and he was sentenced to life imprisonment with possibility of parole. The Hawaii Supreme Court affirmed his conviction but remanded the case for resentencing. Alo was resentenced to 20 years imprisonment. The State now appeals the order granting a writ of habeas corpus.

The United States Supreme Court has held that the Fifth Amendment guarantee

---

* The Honorable William C. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. Detective Springer informed Alo of his *Miranda* rights.

of the right to remain silent is not necessarily violated when a defendant who testifies in his own defense is impeached with his prior silence. *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926). In *Raffel* the defendant was cross–examined regarding his not testifying at an earlier trial arising from the same charges. In *Jenkins* the defendant was questioned regarding his prearrest silence with respect to a stabbing that at trial he claimed was in self–defense. Use of cross–examination as to prior silence in those cases allowed the prosecutors to test the witnesses' credibility "by asking them to explain prior inconsistent statements and acts." *Jenkins v. Anderson,* 100 S.Ct. at 2129.

■ However, "prior silence cannot be used for impeachment where silence is not probative of a defendant's credibility and where prejudice to the defendant might result." *Id.* (citing *United States v. Hale,* 422 U.S. 171, 180–81, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975) and others).[2] Moreover, use for impeachment purposes of a defendant's silence "at the time of arrest and after receiving *Miranda* warnings" violates the due process clause. *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *accord Bradford v. Stone,* 594 F.2d 1294 (9th Cir. 1979).

The State argues that the cross–examination of Alo was permissible because it challenged the truthfulness of Alo's testimony that he told the arresting officer that he did not know what had happened to his girl friend because he had just gotten back to the apartment after taking a walk. If that truly had been the intent and the extent of the cross–examination, there might not have been a due process violation. *See Doyle v. Ohio,* 426 U.S. at 619 n.11, 96 S.Ct. at 2245 n.11 (dictum suggesting propriety of use of post–arrest silence to impeach defendant who claims to have made exculpatory statement upon arrest). However, the prosecutor's questions here strayed far afield from the narrow confines of this path.

■ It is true that on direct examination Alo testified that he had told his arresting officer that he thought his girl friend was in the apartment and that he was returning from a walk. It is also true that, as the Hawaii Supreme Court found, "[t]he [prosecutor's] initial questions had a legitimate tendency to test the memory and the veracity" of Alo; they were directed at discovering to which police officers Alo claimed he had told his story. The prosecutor's subsequent questions do not probe for possible inconsistencies of Alo's responses with his prior testimony, however. Rather, the prosecutor asked about statements that Alo made not at the time of his arrest, but after he was informed of his right to remain silent. Furthermore, these questions imply that Alo's silence at the time of his arrest was substantive evidence of guilt.[3] This implication places an impermissible burden upon the exercise of constitutional rights.

Although by taking the witness stand Alo was "subject to cross–examination impeaching his credibility just like any other witness," *Grunewald v. United States,* 353 U.S. 391, 420, 77 S.Ct. 963, 981, 1 L.Ed.2d 931 (1957), the questions asked by the prosecutor were prejudicial and violated Alo's constitutional rights. *See Doyle v. Ohio,* 426

**2.** We cannot use our supervisory powers in this instance as the Supreme Court did in *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), because this case originated in the state court system. *See Doyle v. Ohio,* 426 U.S. 610, 617 n.8, 96 S.Ct. at 2244 n.8 (1976). Nonetheless, the same test may be used in both state and federal cases where prejudice to the defendant is so great as to deprive him of due process. *Id.* at 618 n.9, 96 S.Ct. at 2245 n.9.

**3.** We agree with the district court that the following questions were the most egregious:

Q You mean to say, Mr. Alo, that you are accused of the crime of attempted murder and you don't recall whether you talked to any police officers after you were arrested?

Q You explained to him that you weren't the one, Mr. Alo? You didn't do that?

Q But, now, at the time of trial you come in and tell us that you didn't do it.

U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Bradford v. Stone*, 594 F.2d at 1295.

In the lower court the State conceded that if there was constitutional error, it was not harmless beyond a reasonable doubt. We reach that conclusion independently.

The evidence here does not preclude doubt about the verdict. *See Bradford v. Stone*, 594 F.2d at 1296. The evidence consisted of the victim's testimony and the paraffin casts of Alo's hands (which were not conclusive). As the district court noted "[t]he jury had to determine who was telling the truth, [the victim] or Mr. Alo, and it believed [the victim]." Having no instruction to the contrary, the jury might have inferred Alo's guilt from the fact of his post–arrest silence. The error cannot be considered harmless beyond a reasonable doubt.

Accordingly, the order of the district court granting Alo's petition for a writ of habeas corpus is AFFIRMED.