2 F.3d 1159
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louisiana Johnson OWENS, Defendant-Appellant.
 No. 91-50870.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 8, 1992.
Decided July 7, 1993.
 
 Before BROWNING, SCHROEDER and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Owens appeals her jury convictions for conspiracy to commit a postal robbery, in violation of 18 U.S.C. Secs. 371 and 2114; postal robbery, in violation of 18 U.S.C. Sec. 2114; and use of a firearm during a crime of violence, in violation of 18 U.S.C. Sec. 924(c). The district court had jurisdiction pursuant to 18 U.S.C. Sec. 3232. The jurisdiction of this court rests on 29 U.S.C. Sec. 1291. We affirm.
 
 FACTS
 
 3
 Defendant Owens, formerly a postal worker at the North Hollywood Post Office, is accused of hiring two men to rob it. According to the testimony of government witnesses, Roberts and Williams, Owens met with her accomplices several times to plan the robbery. She provided a tour of the facility, keys to gain access, and instructed the two to carry a gun. On February 4, 1991, Roberts and Williams robbed the North Hollywood branch, seizing over $25,000. Owens assisted them by appearing to be a hostage and by tying up the other employees under orders from the gunmen.
 
 
 4
 Approximately a week before the robbery, Arnulfo Garcia, a relief clerk assigned to the branch, saw a young black man and a middle-aged black woman talking inside the post office. Three months later an agent showed Garcia photographs of three black men. The agent believed they resembled Roberts, but he did not ask Garcia to describe the young black man he had seen before showing him the pictures. Garcia testified that one of these photographs "best described" the man he saw. Defendant unsuccessfully moved to strike the evidence.
 
 
 5
 Owens provides a different account of the events leading up to the robbery. She testified that she did not plan or assist in the robbery. She knew Roberts and Williams only as the friends of her son, "Pops." She recalled that one afternoon before the robbery Roberts and Williams were waiting for her son to return home while she was talking on the telephone with a friend about the general conditions of work, including the lack of building security. After the conversation ended, they briefly questioned her about previous robberies. She also testified that she made a general practice of leaving her purse (containing her keys to the post office) on the kitchen counter top, presumably making the keys accessible to anyone who entered the home.
 
 
 6
 In the course of cross-examining Owens, the prosecutor enquired into her failure to identify her coconspirators at arraignment. Owens acknowledged that she recognized Roberts and Williams but did not bring this to the attention of the police because "nobody never asked." Supp. Excerpts of Record at 21. The judge sustained defendant's objection and issued two curative instructions; one immediately after a side-bar conference, the other as part of the general instructions to the jury not to consider evidence to which an objection was sustained. He denied defendant's motion for a mistrial.
 
 
 7
 Defendant, under Fed.R.Evid. 609(d), sought to introduce evidence of Roberts' prior juvenile convictions. These included snatching a purse from an eight-month pregnant woman and making off with her car (charged as robbery and vehicle theft, respectively). The district court denied the request. Defendant was permitted to cross-examine both Roberts and Williams on their initial status as codefendants and on their plea agreements with the Government to testify against her. Owens was convicted and sentenced to 130 months imprisonment.
 
 STANDARDS OF REVIEW
 
 8
 We review de novo whether a prosecutor's inquiry into the postarrest silence of a defendant violates her Fourteenth Amendment rights to a fair trial. Doyle v. Ohio, 426 U.S. 610, 619 (1976); United States v. Newman, 943 F.2d 1155, 1157 (9th Cir.1991). Although we review limitations on cross-examination for abuse of discretion, we review de novo "[w]hether limitations on cross-examination are so severe as to amount to a violation of the confrontation clause." United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991). We review evidentiary rulings for abuse of discretion. United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990).
 
 DISCUSSION
 
 9
 We address three questions. First, if the prosecutor committed a Doyle violation, was it harmless error? Second, was Owens denied her Sixth Amendment right to confront witnesses against her as a result of the district court's Rule 609(d) ruling? And last, did the district court abuse its discretion in refusing to strike an eyewitness identification by the government witness?
 
 
 10
 * The Fourteenth Amendment bars " 'the use for impeachment purposes' of a defendant's postarrest silence." Greer v. Miller, 483 U.S. 756, 763 (1987) citing Doyle, 426 U.S. at 619. In Doyle the court held that prosecutorial comment on an arrestee's silence after Miranda warnings constituted constitutional error. 426 U.S. at 619. However, Doyle violations are subject to harmless error analysis. Newman, 943 F.2d at 1158; Bradford v. Stone, 594 F.2d 1294, 1295 (9th Cir.1979); see also, Greer, 483 U.S. at 767-68 (Stevens, J., concurring).
 
 
 11
 During cross-examination, the prosecutor posed a series of questions that began as follows:
 
 
 12
 Q: Mrs. Owens you say you know Reginald Roberts; isn't that right?
 
 
 13
 A: Yes.
 
 
 14
 Q: You know Reginald Roberts because he's a friend of Pops'; right?
 
 
 15
 A: Yes.
 
 
 16
 Q: So on February 6th, when you were arraigned, you recognized Reginald Roberts, didn't you?
 
 
 17
 A: At the arraignment, that was the first time of me seeing Reginald and I recognized him.
 
 
 18
 Q: But you never told anybody that was Pops' friend, did you?
 
 
 19
 A: Nobody never asked me.
 
 
 20
 Q: You didn't think it was significant that the person that robbed the post office was a friend of your son's?
 
 
 21
 A: Repeat your question, please.
 
 
 22
 ....
 
 
 23
 Q: At the arraignment were Reginald Roberts and Jerome Williams; right?
 
 
 24
 A: Right.
 
 
 25
 Q: And you recognized them, didn't you?
 
 
 26
 A: Yes, I did recognize them.
 
 
 27
 Q: And you never said anything to anybody: isn't that right?
 
 
 28
 Supp. Excerpts of Record at 21-22 (emphasis added). The prosecutor appears to have been advancing from Owens "knowing" Roberts, to "recognizing" Roberts, to "saying something" about knowing him to the police.[1] Her silence was highlighted in three questions. First, "You never told anybody ...?" Second, "Didn't [you] think it was significant ...?" Third, "You never said anything to anybody ...?" Owens answered only one question. She effectively admitted her silence at arraignment by justifying it: "nobody never asked me."[2] On the second question she called for a clarification before answering. Her lawyer interrupted before she could answer the last question. After the sidebar discussion, the trial judge characterized the "series of questions" as going "to whether Ms. Owens made any statement regarding the identity of the codefendants at the time of the arraignment." Excerpts of Record at 16 (emphasis added). Assuming, without deciding, that a Doyle violation occurred, we analyze whether it constituted harmless error. Cf. United States v. Gabay, 923 F.2d 1536, 1541 (11th Cir.1991) (analyzing potentially improper exchange for harmless error).
 
 
 29
 On direct appeal, where a Doyle violation is alleged, we decide whether the error was harmless beyond a reasonable doubt under the Chapman standard. See Newman, 943 F.2d at 1158 (citing Chapman v. California, 386 U.S. 18 (1967)); Alo v. Olim, 639 F.2d 466, 469 (9th Cir.1980); see also Greer, 483 U.S. at 767 (Stevens, J., concurring) (direct review standard); cf. Brecht v. Abrahamson, 61 U.S.L.W. 4335 (U.S. April 21, 1993) (applying less demanding standard on collateral review). The test is whether the "comment is extensive, [whether] an inference of guilt from silence is stressed to the jury as a basis of conviction, and [whether] there is evidence that could have supported acquittal." Quigg v. Crist, 616 F.2d 1107, 1110 (9th Cir.), cert. denied, 499 U.S. 922 (1980); see also Newman, 943 F.2d at 1158; United States v. Espinosa, 827 F.2d 604, 616 (9th Cir.1987). "[W]here the prosecutorial comment was a single isolated statement, where it did not stress any reference to guilt, and where it was followed by curative instructions, we have been reluctant to reverse." Espinosa, 827 F.2d at 616.
 
 
 30
 Although the "series of questions" and one answer could not be described as a "single isolated statement," the weight of evidence against Owens, combined with the trial judge's unambiguous curative instructions, reduced the exchange, even if improper, to harmless error. The questions the prosecutor posed to Owens stressed silence rather than guilt. He never returned to her silence during the arraignment in closing arguments.
 
 
 31
 By contrast, in Newman, the trial court gave confusing guidance. First, it allowed the prosecutor to proceed with the improper line of questioning, then it issued an instruction. Shortly afterwards, faced with a continuation of the same line of questioning, it overruled defendant's objection. We consequently concluded that the extensive comments led ineluctably to the conclusion that Newman "must have been guilty because an innocent person would not have remained silent." Newman, 943 F.2d at 1158. Moreover, the Newman court indicated that its "decision [was] bolstered by the overall weakness of the government's case." Newman, 943 F.2d at 1158. The same cannot be said here. Although the evidence against Owens was in part circumstantial, it is compelling.
 
 II
 
 32
 The Sixth Amendment guarantees a criminal defendant the right to cross-examine witnesses in a manner "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Davis v. Alaska, 415 U.S. 308, 316 (1974); Reiger v. Christensen, 789 F.2d 1425, 1433 (9th Cir.1986).
 
 Rule 609(d) provides:
 
 33
 Evidence of juvenile adjudications is generally not admissible ... however, in a criminal case [a court] may allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.
 
 
 34
 Fed.R.Evid. 609(d). The district court denied defendant's motion to introduce evidence of one government witness' prior juvenile convictions.
 
 
 35
 In reviewing Owens' Sixth Amendment claim, we determine "whether the jury, without the cross-examination [Owens] desired, '[was] otherwise in possession of sufficient information upon which to make a discriminating appraisal of the subject matter at issue." Bright v. Shimoda, 819 F.2d 227, 228 (9th Cir.1987) cert. denied 485 U.S. 970 (1988). The Reiger court found that evidence of a witness' prior shoplifting conviction did not suggest any bias or any "special reason to cooperate with the government" and was "only marginally relevant to [his] overall credibility." Reiger, 789 F.2d at 1432-33. Such evidence did not implicate the defendant's Sixth Amendment rights to "reveal[ ] possible biases, prejudices, or ulterior motives." Davis, 415 U.S. at 316.
 
 
 36
 In this case, Owens was able to explore the motivations of both government witnesses to testify against her. She cross-examined both intensively on their cooperation agreement with the Government. See Shimoda, 819 F.2d at 229 ("when substantial cross-examination has taken place, courts are less inclined to find confrontation clause violations"). Evidence about one witness's prior convictions for robbery and car theft could not be said to "relate directly to issues or personalities in the case at hand." Davis, 415 U.S. at 316. It was marginally relevant, if at all. To the extent Owens sought to impeach Roberts, the jury was not without substantial information as to the character of both witnesses. In closing argument, the prosecutor himself underlined their role in the crime: "the government would love to have all of our witnesses be priests and nuns.... They don't commit armed robberies ... so what we're stuck with are the people who actually commit the robbery." Court Record at 3B-13 (emphasis added). That armed-robber Roberts was also a teenage purse-snatcher adds little to the record of bias or ulterior motivation which a defendant is constitutionally permitted to develop. Cf. United States v. Guthrie, 931 F.2d 564, 568 (9th Cir.1991) (testimony about alleged involvement with murder may be excluded as unnecessary for jury to properly evaluate credibility). We conclude that the exclusion of his juvenile adjudication under Fed.R.Evid. 609(d) did not violate Owens' confrontation rights.
 
 III
 
 37
 Defendant moved to strike the identification evidence offered by witness Garcia with respect to Roberts. She contends the photographic spread was improper and the testimony resulting from it was prejudicial, "unduly suggestive," and "an irreparable misidentification." Defendant fundamentally misapprehends the scope of the law. The line of cases she cites excludes from evidence testimony about an accused (not a third-party) if the identification procedures (not the testimony) are unduly suggestive and unreliable. Manson v. Brathwaite, 432 U.S. 98 (1977); Neil v. Biggers, 409 U.S. 188 (1972); Stovall v. Denno, 388 U.S. 293 (1967). According to the Supreme Court, "the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification' " of the accused. Biggers, 409 U.S. at 198 (citing Simmons v. United States, 390 U.S. 377, 384 (1968)). The doctrine protects the personal due process rights of criminal defendants. Stovall, 388 U.S. at 301-02.
 
 
 38
 Satisfied that no constitutional question is at issue here, we review the admission of photographic evidence and testimony under the standard applied to admissions of evidence. The Government argued the identification went to corroborating Roberts' testimony. Defendant had every opportunity in cross-examination and closing argument to bring out the irregular nature of the photographic spread and the minimal corroborative value of Garcia's testimony. She also could have denied that the encounter took place. "Balancing the probative value of the evidence against its prejudicial effect and giving deference to the decisions of the district court," we conclude that the judge did not abuse his discretion. Houser, 929 F.2d at 1373.
 
 CONCLUSION
 
 39
 Finding no reversible error, we affirm defendant's conviction.
 
 
 40
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 As in Greer, the exchange came at the beginning of the cross-examination. Cf. Greer, 483 U.S. at 759, 773
 
 
 [2]
 Cf. Bradford v. Stone, 594 F.2d 1294, 1295 (9th Cir.1979) (finding the "fact of petitioner's post-arrest silence" established when "petitioner responded [to a question about whether he had said anything to the police] that he had not--because he had not been asked") (emphasis added)