**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 3, 2001

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                            No. 116852

ERIC SHERROD DENNIS,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

Defendant was convicted by a jury of (1) possession with intent to deliver more than 50, but less than 225, grams of cocaine, MCL 333.7401(2)(a)(iii); (2) possession of marijuana, MCL 333.7403(2)(d); (3) carrying a concealed weapon in a vehicle, MCL 750.227; (4) malicious destruction of police property, MCL 750.377b; (5) possession of a firearm during the

commission of a felony, MCL 750.227b; and (6) felon in possession of a firearm, MCL 750.224f. The Court of Appeals reversed defendant's convictions because of testimony from a police detective that referenced defendant's refusal to submit to police questioning. While the testimony was inappropriate, we conclude that it did not amount to a violation of defendant's constitutional right to due process and that the trial court did not abuse its discretion by denying defendant's motion for a mistrial. Accordingly, we reverse the judgment of the Court of Appeals and reinstate defendant's convictions.

I

On the afternoon of August 23, 1997, defendant was a passenger in a van that was stopped by the police. A police officer observed that defendant was sitting with an object that turned out to be a safe between his legs. Eventually, the police called for a drug sniffing dog to be brought to the scene. At that point, defendant became "extremely enraged" and was placed in the back of a police car. After being placed in the police car, defendant kicked out its rear window, completely shattering the window. Eventually, the dog was brought inside the van, and it alerted to the safe. Later, the police opened the safe and found several packets of

2

cocaine, a small amount of marijuana, a loaded "Tech Nine" handgun, and over $2,000 in cash.[1] This led to the present charges and convictions against defendant.

At issue now is the following testimony from defendant's trial that transpired during the direct examination of police detective Kent Cooper by the prosecutor after eliciting testimony that defendant had been arrested:

> *Q.* What type of investigation follow-up did you do with regard to this?
>
> *A.* I went out and attempted to interview [defendant], and at that time it was refused. He wished to speak to an attorney prior to me asking him any questions.

We note that the trial record does not include any express mention that defendant had been advised of his *Miranda*[2] rights to remain silent and to have an attorney present during custodial interrogation. However, the prosecution has effectively stipulated that defendant was in police custody following his arrest at the time of the attempted questioning

---

[1] Notably, defendant had also been a passenger in another vehicle that was stopped earlier that day. Defendant consented to a search of his person during that earlier stop. The police found over $1,000 in cash in one of his pockets, mostly in $20 bills, and several "corner baggies," which are plastic baggies with the bottoms torn off and that are tied off with a knot. A police officer indicated that "corner baggies" are frequently used by drug dealers. However, no drugs were found on defendant's person at that time and he was released.

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

and had been advised of his *Miranda* rights before rejecting Detective Cooper's attempt to interview him.[3] Accordingly, our decision presumes that defendant's refusal to submit to police questioning constituted "post-*Miranda*" silence.

Defense counsel requested a mistrial on the basis of Detective Cooper's testimony about defendant refusing to be questioned before speaking with an attorney. The trial court denied this request, stating that it was convinced the prosecutor did not intend to elicit testimony on this point and that it did not think "the jury picked it up or caught it in any way."

In its final instructions to the jury, the trial court provided the following curative instruction with regard to Detective Cooper's testimony referencing defendant's refusal to submit to a police interview:

> Also, at one time Detective Cooper made mention of the fact that when we [sic] went out to the jail to talk to [defendant], [defendant] did not want to talk to him and [defendant] said that he wanted a lawyer.
>
> This is an absolute right that every citizen of this country has. In fact, if Officer Cooper had talked to [defendant], he would have had to tell [defendant] before he even started talking that [defendant] had a right to refuse to talk, and [defendant] had a right to have a lawyer present

---

[3] In its brief to this Court, the prosecution states that it is not "arguing that the defendant's comment was pre-*Miranda* or that the defendant's invocation of his right to counsel should have been admissible."

4

when he was talking to the officer.

So the fact that [defendant] said he wanted a lawyer and didn't want to talk to the officer cannot be used by you in any way and is not any indication of anything. It's a constitutional right that every citizen of this country has.

II

Defendant argued before the Court of Appeals that the trial court improperly denied his motion for a mistrial. The Court of Appeals agreed with that conclusion. It treated the improper testimony from Detective Cooper as constituting a preserved claim of constitutional error that requires reversal unless it was harmless beyond a reasonable doubt. The Court stated that it could not conclude the error was harmless beyond a reasonable doubt and, accordingly, held that the trial court abused its discretion by denying defendant's motion for a mistrial. Unpublished opinion per curiam, issued April 14, 2000 (Docket No. 215244).

In its appeal to this Court, the prosecution argues that there was no constitutional violation because the prosecution did not attempt to use defendant's post-*Miranda* silence against him and that the trial court did not abuse its discretion by denying defendant's motion for a mistrial. As we will explain below, we agree.

5

We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. See, e.g., *People v Grove,* 455 Mich 439, 475-476; 566 NW2d 547 (1997).

In *Miranda v Arizona*, 384 US 436; 865 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court articulated the rule that the police must advise a suspect before custodial interrogation that the suspect has the right to remain silent, that anything the suspect says may be used against him, and that the suspect has a right to the presence of retained or, if indigent, appointed counsel during questioning.[4] To be clear, the present case does not involve any allegation of a violation of *Miranda* itself because there is no claim that defendant was interrogated by the police without being afforded the warnings required by *Miranda*. Neither does this case involve any other type of claim under the Self-Incrimination Clause of the Fifth Amendment, inasmuch as there is no claim that any involuntary statement by defendant was used against him.

Rather, properly understood, the present case involves a question regarding whether the testimony at issue from

_____

[4] In *Dickerson v United States,* 530 US 428; 120 S Ct 2326, 2336; 147 L Ed 2d 405 (2000), the Court quite recently held that *Miranda* announced a binding "constitutional rule" under the Fifth Amendment in requiring these warnings.

6

Detective Cooper violates defendant's constitutional right to due process under the Fourteenth Amendment. In *Doyle v Ohio,* 426 US 610, 619; 96 S Ct 2240; 49 L Ed 2d 91 (1976), the United States Supreme Court held that the use of a criminal defendant's silence "at the time of arrest and after receiving *Miranda* warnings" for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

The *Doyle* Court explained that silence in the face of *Miranda* warnings cannot be used as evidence[5] to cast doubt on the defendant's credibility for two basic reasons. First, silence in the face of *Miranda* warnings may reflect nothing more than an exercise of *Miranda* rights (as opposed to being any implicit acknowledgment of guilt):

> Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. [*Doyle, supra* at 617.]

Second, the *Miranda* warnings carry an implicit assurance that silence in reliance on those warnings will not be penalized:

---

[5] The only exception is a situation in which a defendant testifies to having earlier provided an exculpatory version of events to the police and the prosecution offers evidence of defendant's silence to rebut such a claim. *Doyle, supra* at 619, n 11. The Court, however, declined to allow the fact of silence to be raised by the officers in testimony even when the defendant offers an exculpatory version of events at trial.

7

> Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. [*Doyle*, *supra* at 618.]

Accordingly, the *Doyle* Court quoted with approval the statement in Justice White's concurrence in *United States v Hale,* 422 US 171, 183-184; 95 S Ct 2133; 45 L Ed 2d 99 (1975), that "it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence at the time of arrest . . . ." after the defendant has received *Miranda* warnings. *Doyle, supra* at 620. The *Doyle* Court reversed the convictions of the defendants on the basis of the prosecution's conduct in using their post-*Miranda* silence against them.

The circumstances of the present case differ greatly from those of *Doyle.* In *Doyle,* the prosecution unabashedly used the silence of each of the two defendants in the face of *Miranda* warnings against them at their respective trials. The prosecution repeatedly asked each defendant questions to emphasize that he did not provide an exculpatory version of events to the police after being arrested. In contrast, the present case involves a single question and answer in which Detective Cooper revealed in response to an open-ended

8

question that defendant had refused to be interviewed by the detective before speaking with an attorney.

We recognize that Detective Cooper's answer may not reasonably be viewed as nonresponsive to the prosecutor's open-ended question asking about the "type of investigation follow-up" pursued by the detective. Detective Cooper's reply about his attempt to interview defendant described something that he did in attempting to investigate the case after defendant was arrested. On the other hand, there is nothing to reasonably support a conclusion that the prosecutor intended for this question to elicit a reference to the attempted interview. Immediately after the detective's answer referencing defendant's refusal of the police interview, the detective began testifying about his other investigative efforts. In our view, it is evident that the prosecutor's question, while it may have been inartfully phrased, was aimed at eliciting testimony about these investigative efforts, not about the defendant's refusal of a police interview.[6]

---

[6] Nevertheless, this case provides an excellent opportunity to underscore the prosecutor's continuing duty to carefully question witnesses so as to avoid improper, unforeseen testimony that may result from open-ended questions.

We respectfully disagree with the dissent's characterization of this case as involving "a series" of questions and answers focused on defendant's silence. Slip op, pp 1, 10. As may be seen from the quotation of the
(continued...)

9

In considering the implication of the substantial difference between this case and *Doyle,* we are guided by the intervening decision of the United States Supreme Court in *Greer v Miller,* 483 US 756; 107 S Ct 3102; 97 L Ed 2d 618 (1987). In *Greer,* the defendant[7] testified at his trial, claiming that he was innocent of the murder and related crimes charged and providing an exculpatory version of events that implicated two others as the perpetrators. *Id.* at 758. During the prosecutor's cross-examination of the defendant, he asked, "why didn't you tell this story to anybody when you got arrested?" *Id.* at 759. Defense counsel immediately objected, and the trial court sustained the objection and instructed the jury to ignore the question. Importantly, the prosecution did not pursue the inquiry further or mention it during closing argument. In its jury instructions, the trial court told the

---

[6](...continued)
testimony set forth in the dissent, slip op, pp 6-7, the prosecutor only asked Detective Cooper one question that specifically regarded whether other people spoke with him. The prosecutor never commented on or stated that any inference should be drawn from the apparent willingness of certain witnesses to speak with Detective Cooper as opposed to defendant's refusal to be interviewed prior to speaking to an attorney.

[7] *Greer* was actually a federal habeas corpus action. However, the important points of *Greer* involve the trial in which the petitioner was a criminal defendant. To avoid confusion, we will refer to the petitioner in *Greer* as the "defendant" in that case.

10

jury to disregard questions about which objections were sustained. *Id.*

The United States Supreme Court in *Greer* held that, despite the prosecutor asking an improper question, no actual violation of *Doyle* occurred. *Greer, supra* at 764-765. The Court explained:

> [T]he trial court in this case did not permit the inquiry that *Doyle* forbids. Instead, the court explicitly sustained an objection to the only question that touched upon Miller's postarrest silence. No further questioning or argument with respect to Miller's silence occurred, and the court specifically advised the jury that it should disregard any questions to which an objection was sustained. Unlike the prosecutor in *Doyle,* the prosecutor in this case was not "allowed to undertake impeachment on," or "permit[ted] . . . to call attention to," Miller's silence. The fact of Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case. [*Id.,* citation omitted.]

Thus, the Court held that the prosecutor's improper question did not require reversal of the defendant's convictions. *Id.* at 761. Notably, the *Greer* Court emphasized that "[i]t is significant that in each of the cases in which this Court has applied *Doyle,* the trial court has permitted specific inquiry or argument respecting the defendant's post-*Miranda* silence." *Id.* at 764.

We conclude that the circumstances of this case are analogous to *Greer* and that no *Doyle* violation actually

11

occurred.  Indeed, the conduct of the prosecutor in *Greer* was far worse in that he attempted to directly inject the defendant's silence into the defendant's trial while the prosecutor in the present case inadvertently elicited testimony about the present defendant's refusal to submit to a police interview.  As in *Greer,* apart from the single impropriety, the prosecution did not call attention to defendant's silence.   While the dissent essentially hypothesizes that the jury may have drawn some type of negative inference from the willingness of other witnesses to speak to Detective Cooper, the prosecution never made such an argument to the jury.  In our view, it would be strained to believe that the prosecution intended to draw—or that the jury actually drew—such an implicit "comparison" from Detective Cooper's testimony which was overwhelmingly focused on presenting expert testimony about the drug trade.  There was no further questioning or argument regarding defendant's silence.   Thus, the trial court did not allow (or have occasion to allow) any specific inquiry or argument about defendant's post-*Miranda* silence.  Further, because defendant in the present case did not testify, there was obviously no attempt to use his prior silence for impeachment purposes.[8]

---

[8] Of course, we recognize that a defendant's post-*Miranda* silence could be improperly used against him in violation of (continued...)

Moreover, the trial court gave a forceful curative instruction to the jury that defendant saying he wanted a lawyer and did not wish to talk with the officer "cannot be used by you in any way and is not an indication of anything." Thus, as in *Greer,* "[t]he fact of [the defendant's] postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . ." *Id.* At 764.

Critical to our conclusion is that *Doyle* prohibits "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings . . . ." *Doyle, supra* at 619. Because defendant did not testify, the testimony at issue by Detective Cooper could not possibly have been used against defendant for impeachment purposes. Thus, this is not a case like *Doyle* in which the prosecution essentially attempted to use a defendant's post-*Miranda* silence to further an argument that the defendant presented a fabricated version of events on the basis of hearing the evidence presented by the prosecution at trial.

---

[8](...continued)
*Doyle* even in cases where the defendant did not testify. We merely note that the fact that the testimony at issue was obviously not used for impeachment purposes is one factor suggesting that there was no "use" of defendant's post-*Miranda* silence against him in the present case.

13

This reinforces that the prosecution did not use defendant's post-*Miranda* silence against him in this case.

We note that our conclusion that no *Doyle* violation occurred in this case is supported by the decision of the United States Court of Appeals for the Eleventh Circuit in *United States v Stubbs,* 944 F2d 828 (CA 11, 1991). That case similarly involved improper testimony by a witness in response to an open-ended question. The prosecutor asked a prosecution witness what happened after she talked to a federal agent. In her answer, the witness said that the agent told her that the defendant would not "say anything." *Id.* at 834. As in the present case, the prosecution in *Stubbs* did not attempt to draw out further information about the defendant's cooperation with the police and never mentioned the issue during closing argument. However, the defendant argued on appeal that the testimony improperly commented on her postarrest refusal to talk with the police in violation of *Doyle.* The Eleventh Circuit concluded that no *Doyle* violation occurred:

> While a single comment alone may sometimes constitute a *Doyle* violation,[9] the Supreme Court's opinion in *Greer* makes clear that a single mention does not automatically suffice to violate defendant's rights when the government does not

---

[9] Accordingly, contrary to the dissent's indication, we do not suggest that a single comment may never constitute a *Doyle* violation. Slip op, p 7, n 6. We merely conclude that the single isolated incident at issue in the present case did not constitute a *Doyle* violation.

specifically and expressly attempt to *use*-as was attempted in *Doyle* and in *Greer*-the improper comment to impeach the defendant. See *Lindgren v Lane,* 925 F2d 198, 201 (CA 7, 1991) ("As explained in *Greer v Miller,* . . . it is the use of an accused's silence against him at trial by way of *specific inquiry or impeachment* that forms the basis for a violation of the Fourteenth Amendment.") (emphasis added). As was the case in *Greer,* the prosecutor here "was not allowed to undertake impeachment on, or permitted to call attention to [defendant's] silence." *Greer,* 483 US at 764 (citation omitted). The prosecution made no "specific inquiry or argument" about defendant's postarrest silence. *Id.* Accordingly, we conclude there was no *Doyle* violation in this case. [*Stubbs, supra* at 835 (emphasis in original).]

As in *Stubbs,* the present case involved no specific inquiry by the prosecution regarding defendant's silence or any attempt to use that silence for impeachment purposes. Accordingly, *Stubbs* reinforces our conclusion that there was no violation of defendant's constitutional right to due process under *Doyle* in the present case.[10]

_____

[10] Our decision is also consistent with the holding of the Indiana Supreme Court in *Cook v State,* 544 NE2d 1359, 1363 (Ind, 1989), that testimony by a federal agent that there was no further contact with the defendant at a certain point because he "had made a request to speak to an attorney" did not constitute a *Doyle* violation. Similar to the present case, the remark was an "isolated statement," and there was no specific inquiry or argument from the prosecution regarding the defendant's post-*Miranda* silence. *Cook, supra.* See also *Pulley v Commonwealth,* 31 Va App 600, 605; 525 SE2d 51 (2000) (holding that there was no *Doyle* violation from a police officer's nonresponsive comment that the defendant invoked his right to counsel where the prosecution did not exploit the issue); *State v Baccam,* 476 NW2d 884, 886-887 (Iowa App, 1991) (finding no abuse of discretion in the trial court's denial of a mistrial on the basis of a single comment related to the
(continued...)

We acknowledge that, as argued by defendant, this case differs from *Greer* in that a witness actually testified in the presence of the jury that defendant refused to submit to police questioning. Essentially, defendant contends that this circumstance makes this case worse than *Greer* and involves an actual *Doyle* violation because evidence of the defendant's silence was actually placed before the jury as opposed to a question that merely insinuated such silence. However, we do not accept this argument. The prosecutor in the present case made no effort to use the testimony about defendant's silence against him. In contrast, the prosecutor in *Greer* insinuated that the defendant's testimony in that case was questionable because he did not provide his story to the police at an earlier point. If the prosecutor's conduct in *Greer* did not constitute "use" of the defendant's silence against him, then neither did the inadvertently elicited testimony in this case.[11]

---

[10](...continued) defendant's post-*Miranda* silence where trial court gave curative instruction and the silence was not used against the defendant).

[11] We note that, in light of our conclusion that no constitutional error occurred, the "harmless beyond a reasonable doubt" test used by the Court of Appeals is inapposite. Like the Eleventh Circuit in *Stubbs*, "[w]e do not reach the issue of harmless error because we conclude that, absent *use* by the prosecution of the comment on defendant's postarrest silence, there was no *Doyle* violation." *Stubbs*,

(continued...)

In light of our conclusion that there was no violation of defendant's due process rights under *Doyle,* we hold that the trial court did not abuse its discretion in denying defendant's motion for a mistrial. As the *Greer* Court stated, "we normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Id.* at 767, n 8 (citations omitted). The trial court in the present case emphatically instructed the jury to place no weight on defendant's invocation of his *Miranda* rights. Thus, it was reasonable for the trial court to conclude that any possible prejudice from the improper testimony from Detective Cooper could be cured with a cautionary instruction and that a mistrial was not required.[12]

---

[11](...continued)
*supra* at 835, n 10  (emphasis in original).

[12] Indeed, this analysis is consistent with *Greer.* The *Greer* Court stated that it had no reason to believe that the jury was incapable of obeying curative instructions and that, far from being "devastating," evidence of the defendant's postarrest silence was at most "insolubly ambiguous." *Id.* at 767, n 8. As a further consideration, Detective Cooper's testimony did not state that defendant absolutely refused to be interviewed by the police, but rather only that he wanted to speak to an attorney before being questioned. A desire to
(continued...)

For the foregoing reasons, we disagree with the Court of Appeals decision to reverse defendant's convictions.[13]

Our judgment that the circumstances of the present case do not warrant reversal of defendant's convictions should in no way be taken as condoning the inappropriate injection of a defendant's exercise of the *Miranda* rights into a trial by either prosecutors or the police. In the present case, considering (1) the limited nature of the improper testimony, (2) the lack of any effort by the prosecution to improperly use defendant's invocation of the *Miranda* rights against him, (3) the strong curative instruction used by the trial court,

---

[12](...continued)
involve an attorney in a police interview or interrogation could well be understood by a juror as reflecting a concern for being treated fairly and wishing the assistance of a sophisticated advocate to respond to any unfair questioning that might seek to turn the suspect's words against himself. A typical citizen should understand such concerns and not regard the request for an attorney before questioning as being "suspicious" in the same way that an absolute refusal to speak with the police might be taken. Accordingly, the present opinion does not address a situation in which police testimony makes clear that a defendant has absolutely refused to be interviewed by the police.

[13] We also note that we are puzzled at that Court's decision to reverse defendant's conviction of malicious destruction of police property. From the record, and even from the recitation of facts in the Court of Appeals opinion, there was undisputed evidence that defendant openly kicked out the window of a police car in the presence of police officers. Accordingly, it is evident that any possible error was harmless beyond a reasonable doubt with regard to the malicious destruction charge in light of the overwhelming evidence of guilt regarding that charge.

and (4) that defendant did not testify so there is no concern of his post-*Miranda* silence having been used for impeachment purposes, we conclude that there was no constitutional violation and that the trial court did not abuse its discretion by declining to order a mistrial.

IV

In sum, we conclude that the inadvertent elicitation of testimony that defendant exercised his *Miranda* right to decline police questioning without the presence of counsel did not constitute a violation of defendant's constitutional right to due process under *Doyle.* The circumstances of this case did not involve use by the prosecution of defendant's post-*Miranda* silence against him within the meaning of *Doyle* and *Greer.* Thus, we reverse the judgment of the Court of Appeals and reinstate defendant's convictions.

CORRIGAN, C.J., and WEAVER, YOUNG, and MARKMAN, JJ., concurred with TAYLOR, J.

19

S T A T E   O F   M I C H I G A N

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                    No. 116852

ERIC SHERROD DENNIS,

    Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

    I find that the prosecutor in this case used defendant's post-*Miranda*[1] silence against him. He asked a series of questions that compared and contrasted defendant's refusal to submit to a police interview with the acquiescent responses of other witnesses in similar circumstances. By doing so, the prosecutor submitted defendant's post-*Miranda* silence to the jury as evidence from which it was allowed to draw an inference of guilt, thereby violating due process. Thus, I would affirm the Court of Appeals decision to reverse

_____

    [1]*Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

defendant's convictions and hold that the trial court's refusal to grant a mistrial was an abuse of discretion.

## I. *Doyle* and its Progeny

In finding no due process violation below, the majority takes solace in the fact that the prosecutor did not "use" defendant's invocation of *Miranda* rights to impeach him. I think that this is an overly narrow view of due process protections.

A defendant's due process right not to have his post-*Miranda* silence used against him exists in more situations than where a prosecutor uses the silence to impeach. To be sure, *Doyle v Ohio*[2] held that due process is violated where a prosecutor impeaches a defendant with evidence of his post-*Miranda* silence. But, the point of *Doyle* is "that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter . . . us[e] the silence to impeach [him]" or otherwise "make use of the . . . exercise of those rights in obtaining his conviction." *Wainright v Greenfield*, 474 US 284, 292; 106 S Ct 634; 88 L Ed 2d 623 (1986). "What is impermissible is the evidentiary use of . . . his constitutional rights after the . . . assurance" of *Miranda*. *Id.* at 295.

I believe that it is also fundamentally unfair, and

_____

[2]426 US 610, 618; 96 S Ct 2240; 49 L Ed 2d 91 (1976).

2

therefore, a deprivation of due process, for the prosecution to use a defendant's post-*Miranda* silence as affirmative proof at trial. This conclusion is consistent with that in several decisions that applied *Doyle* to references made to a defendant's post-*Miranda* silence during the prosecution's case in chief. See, e.g., *United States v Moreno*, 185 F3d 465, 473 (CA 5, 1999); *People of Territory of Guam v Veloria*, 136 F3d 648, 651-653 (CA 9, 1998); *United States v Massuet*, 851 F2d 111, 114 (CA 4, 1988); *United States v Elkins*, 774 F2d 530, 537 (CA 1, 1985)*; State v Treesh*, 90 Ohio St 3d 460, 479; 739 NE2d 749 (2001).

The issue in this case is whether defendant's trial was fundamentally unfair. It is whether the prosecutor used defendant's post-*Miranda* silence against him so that it was submitted to the jury as evidence from which the jury could infer guilt.

## II. The Prosecution's "Use" of Defendant's Post-*Miranda* Silence

Although the majority acknowledges that Detective Cooper's testimony was "inappropriate," it nevertheless finds that there was no improper "use" of defendant's post-*Miranda* silence against him in this case. It cites the "limited nature" of the improper testimony and asserts that the prosecutor neither pursued the matter further nor raised the issue during oral argument. I disagree and maintain that the

3

prosecutor did impermissibly use defendant's post-*Miranda* silence against him.

In my view, the majority arrives at an erroneous conclusion in part because it fails to consider Detective Cooper's testimony in context. With this in mind, I will provide a brief review of the facts surrounding this case.

On the afternoon of August 23, 1997, defendant telephoned his grandmother and asked that she send someone to get him in an automobile. She sent her daughter, Nancy Kennebrew, and defendant's half-sister, Evonne Ezell, in the grandmother's van.[3] After defendant got into the van, Grand Rapids Police Officers Beckett and Anderson saw it fail to stop at a stop sign. They stopped the van and found that Ezell was driving, Nancy Kennebrew was in the passenger seat, and defendant was in the back seat apparently straddling a safe.

The officers asked permission to search the occupants. Defendant and Nancy Kennebrew refused, while Ezell agreed. Although no contraband was found on Ezell's person, the officers detained her, directed Nancy Kennebrew and defendant to wait inside the officers' cruiser, then searched the van. Inside, they discovered a locked safe, prompting them to call

---

[3]Defendant's grandmother and her daughter are both named "Nancy Kennebrew." To help avoid confusion, I will refer to the elder Kennebrew as "the grandmother," and the junior Kennebrew as "Nancy Kennebrew."

for assistance from a police dog to determine whether there were prohibited substances inside the safe. Meanwhile, while in the police cruiser, defendant kicked out its rear window. A subsequent search of the safe revealed a handgun, cocaine, marijuana, and a large amount of cash.

At trial, the prosecutor called Grand Rapids Detective Kent Cooper as an expert witness on the subject of controlled substances. After several preliminary questions, the trial court qualified him as an expert. Although one would expect the prosecutor then to query him regarding his expert opinion on certain matters of evidence, the prosecutor opted not to do so immediately. Instead, he questioned Cooper regarding his investigation of the case and engaged in the following colloquy:

> *Q.* [The prosecutor]: Detective, you in fact were the assigned detective for the investigation after the arrest of [defendant], is that correct?
>
> *A.* [Cooper]: Correct.
>
> *Q.* Can you tell the jury how you initially came into contact with this case?
>
> *A.* I was assigned to the Vice Unit day team, and on the day team we are assigned the cases from the previous night of arrest or from the weekend prior to the day that we work.
>
> *Q.* And this arrest occurred on Saturday afternoon, actually, of the 23rd of August?
>
> *A.* Right, and on Monday I received the case.

*Q. What type of investigation follow-up did you do with regard to this?*

*A. I went out and attempted to interview [defendant], and at that time it was refused. He wished to speak to an attorney prior to me asking him any questions.*

*Q. Did you speak with the other persons in this particular case?*

*A. I believe it was the next day that I went to the Kennebrew residence and spoke with Nancy Kennebrew, the younger one. I spoke with the grandmother, and I spoke with Evonne Ezell.*

*Q. And did they give you statements as to their knowledge or lack of knowledge of this incident?*

*A. Yes.*

*Q. And then you obtained warrants in this particular manner?*

*A. Yes.*[Emphasis added.]

Cooper's testimony unequivocally communicated to the jurors that defendant "refused" to submit to police questioning after his arrest and "wished to speak to an attorney" before answering any questions. Whereas the majority labels this as testimony of a "limited nature," it is, in fact, an explicit statement that defendant invoked his *Miranda* rights. It enabled the jury to infer guilt from defendant's silence, thereby violating his due process rights.[4]

---

[4]Contrary to the majority's inherent suggestion, a single
(continued...)

Even if Cooper's reference to defendant's post-*Miranda* silence did not constitute a "use" of post-*Miranda* silence by itself, in subsequent questions the prosecutor did use defendant's post-*Miranda* silence against him. Immediately after Cooper told the jury of the "refusal" to speak, the prosecutor asked Cooper if he spoke with "the other persons in this particular case." Cooper related that he spoke with defendant's grandmother, as well as Nancy Kennebrew and Evonne Ezell. The prosecutor then asked Cooper whether those witnesses gave statements to him. Cooper replied that they did, and then explained that those witnesses' statements led to the issuance of arrest warrants.[5]

---

[4](...continued)
improper comment about a defendant's post-*Miranda* silence may rise to the level of a due process violation. See *Moreno*, *supra* at 473; *Veloria*, *supra* at 651-653; *Lindgren v Lane*, 925 F2d 198, 203 (CA 7, 1991); *United States v Stubbs*, 944 F2d 828, 835 (CA 11, 1991); *Booton v Hanauer*, 541 F2d 296, 298-299 (CA 1, 1976). *Greer v Miler*, 483 US 756; 107 S Ct 3102; 97 L Ed 2d 618 (1987), does not hold otherwise. See *id*. at 764, n 5, rebutting the dissent's contention that the Court held that "a single comment cannot be sufficient to constitute a *Doyle* violation;" *id*. at 770 (Brennan, Blackmun, and Marshall, JJ., dissenting). Indeed, the Court in *Greer* explained that the lack of a violation there stemmed from the "sequence of events," not the fact that there was but one comment. See *id*. at 764-765.

[5]The majority interprets the prosecutor's follow-up questions regarding Cooper's interview with the other witnesses as constituting the real aim of the prosecutor's question to Cooper regarding his "investigation follow-up." I find this interpretation unpersuasive. See *United States v Baker*, 999 F2d 412, 416 (CA 9, 1993), stating that counsel's
(continued...)

Viewed in context, the prosecutor's questions and Detective Cooper's answers demonstrate how the prosecutor compared defendant's willingness to be interviewed by police with the willingness of the other witnesses directly involved. The prosecutor conveyed that defendant refused to speak, but that others who were in the van when it was stopped, and the van's owner, agreed to speak to police. Given that the others were initially implicated with the safe, questions regarding the degree of cooperation by defendant and the others in Cooper's investigation implied that defendant's silence evidenced guilt.[6]

Everything considered, I believe it reasonable to conclude that the prosecutor's line of questioning was intended to call attention to defendant's post-*Miranda* silence and use it against him. The tactics rendered the trial "fundamentally unfair."[7]

---

[5](...continued)
"subjective intent cannot save his overly broad statements." The majority glosses over the fact that the entire series of questions and answers contrasted defendant's and the other witnesses' degree of cooperation in front of the jury.

[6]Apparently, Nancy Kennebrew was charged at one point with possession of the safe's contents.

[7]See *Moreno*, *supra* at 473-474, finding error where the prosecutor's question's "natural consequence, if not purpose," was to draw meaning from the defendant's post-*Miranda* silence; *Veloria*, *supra* at 652, finding *Doyle* error after reviewing entire context of improper testimony; *Elkins*, *supra* at 537, a

(continued...)

8

My conclusion is not altered by the cautionary instruction given in the instant case. A curative instruction does not always eradicate a due process violation brought about by the use of a defendant's post-*Miranda* silence.[8] The instruction here did not address the prosecutor's juxtaposition of defendant's response to Cooper's request for an interview and the other witnesses' responses. Thus, notwithstanding the instruction, the effect of the comparison remained unassailed in the jury's perception. Therefore, the curative instruction does not preclude a finding that the prosecutor used defendant's post-*Miranda* silence against him.[9]

---

[7](...continued)
"*Doyle* violation occurs not only when the objectionable comments explicitly refer to a defendant's failure to answer questions . . . but when the reference to defendant's silence is more oblique . . . ;" *United States v Newman*, 943 F2d 1155, 1158 (CA 9, 1991), finding error requiring reversal where the effect of a police officer's statements, "intended or otherwise, was to suggest to the jury that [the defendant] must have been guilty because an innocent person would not have remained silent"; *State v DiGuilio*, 491 So2d 1129, 1131 (Fla, 1986), it was constitutional error for a police officer to give testimony that was "fairly susceptible of being interpreted by the jury as a comment on silence."

[8]See *Newman*, *supra* at 1156-1157, finding a *Doyle* violation despite two cautionary instructions.

[9]In effect, the majority's reliance on the trial court's curative instruction merely ensures that improper testimony like that submitted here will be admitted in other criminal trials in Michigan. When it occurs, the trial court may give the same curative instruction that was given here, anticipating no error requiring reversal.

9

The impermissible use of defendant's post-*Miranda* silence in this case makes the majority's reliance on *Greer*, *supra*, inapposite. Here, unlike in *Greer*, there was a series of *questions and answers* that focused on defendant's post-*Miranda* silence.[10] Thus, there was actual testimony presented here that conveyed to the jury that defendant "refused" to speak to an investigating officer and wanted to speak to an attorney.

Additionally, the trial court in *Greer* gave two cautionary instructions; the trial court in the present case gave merely one. See *Greer*, *supra* at 759. The trial court's instructions in *Greer* did not specifically mention the earlier impropriety.[11] By contrast, here the trial court's instruction expressly cited Cooper's improper testimony, highlighting the earlier testimonial error and reminding the jury of defendant's refusal to submit to a police interview.

---

[10]The majority explains its conclusion that there was no "use" against defendant of his post-*Miranda* silence by stating that Cooper's testimony "did not state that defendant absolutely refused to be interviewed by the police, but rather only that he wanted to speak to an attorney before questioning." Slip op at 18, n 12. I find it a distinction without a difference. Also, the majority ignores the preceding sentence where Cooper stated that his request to interview defendant was "refused."

[11] In *Greer*, the trial court's first instruction directed the jury to "ignore [the] question, for the time being." *Id.* at 759. The second instruction informed the jury to "disregard questions . . . to which objections were sustained." *Id.*

10

Finally, unlike in *Greer*, the record here supports the conclusion that there was an improper use of defendant's post-*Miranda* silence against him.  Here, the prosecutor highlighted for the jury the fact that defendant chose not to speak to an investigating officer, whereas other persons, possibly associated with the safe, did speak. Because there was a far greater burdening of defendant's rights in the instant case than in *Greer*, I believe that the majority errs in finding *Greer* analogous. See *Moreno*, *supra* at 474, limiting *Greer* to cases where no answer is given to an improper question; *Newman*, *supra* at 1157-1158.

I would find the prosecutor's use of defendant's post-*Miranda* silence violative of due process and the trial court's refusal to grant a mistrial an abuse of its discretion.[12]

### III.  Conclusion

The prosecutor used defendant's post-*Miranda* silence against him by calling the jury's attention to it and by inferring defendant's guilt from it. This rendered defendant's

---

[12]The majority's reliance on *Stubbs*, *supra*, is unavailing. *Stubbs* did not involve, as here, a prosecutor engaging in a specific comparison of defendant's and other witnesses' willingness to speak to police, or a cautionary instruction that expressly reminded the jurors of the improper reference to defendant's post-*Miranda* silence. *Id.* at 835. Also, the improper testimony in *Stubbs* came from a civilian witness; here, the improper testimony came from a police officer and, thus, is subject to greater scrutiny. See *People v Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983).

trial "fundamentally unfair" and violated defendant's due process rights. Thus, I would affirm the Court of Appeals decision to reverse defendant's convictions.

CAVANAGH, J., concurred with KELLY, J.